IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| CAPITAL ASSOCIATED INDUSTRIES, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 1:15-cv-83 |
| ROY COOPER, in his official capacity as Attorney General of the State of North Carolina; NANCY LORRIN FREEMAN, in her official capacity as District Attorney for the 10th Prosecutorial District of the State of North Carolina; and J. DOUGLAS HENDERSON, in his official capacity as District Attorney for the 18th Prosecutorial District of the State of North Carolina, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

Plaintiff, Capital Associated Industries, Inc. ("CAI"), brings this action for declaratory and injunctive relief, challenging the constitutionality of Sections 84-4 and 85-5 of the North Carolina General Statutes ("UPL Statutes"), which govern the unauthorized practice of law, as applied to CAI, and requesting that State Prosecutors be enjoined from enforcing said statutes against CAI. (ECF No. 1 ¶ 100.) The North Carolina State Bar ("State Bar"), though not named by CAI as a Defendant, has intervened in this action. (ECF No. 37 at 1.) Before the Court are CAI's Motion for Preliminary Injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure (ECF No. 19), along with Defendants Roy Cooper, Nancy Lorrin Freeman, and J. Douglas

Henderson's ("State Prosecutors") Motion to Dismiss pursuant to Rules 12(b)(1), 12(b)(6), and 12(b)(7) of the Federal Rules of Civil Procedure (ECF No. 10) and Motion to Dispense with Mediation (ECF No. 12). The Court heard oral argument on the parties' motions on May 29, 2015. For the reasons stated below, the Court denies CAI's Motion for Preliminary Injunction and denies State Prosecutors' Motion to Dismiss.

## I. BACKGROUND

In its Complaint, CAI describes itself as a tax-exempt, non-profit business association that provides human resources-related information, advice, data, education, legislative advocacy, and other benefits and services to approximately 1,080 member organizations throughout North Carolina. (ECF No. 1 ¶¶ 2, 17.) CAI is incorporated under the laws of North Carolina. (*Id.* ¶ 6.) Its members are employers in North Carolina that pay annual membership dues to CAI to avail themselves of its services. (*Id.* ¶ 17.) In addition to the services outlined above, CAI wishes to provide legal advice and services to its members through attorneys employed by CAI. It argues that it is prevented from doing so because of the threat it will be prosecuted under Sections 84-7 and 84-8 of the North Carolina General Statutes, which criminalize violations of the UPL Statutes. (*Id.* ¶ 44.) CAI claims that the UPL Statutes, as applied to CAI, violate its Fourteenth Amendment and First Amendment rights, are unconstitutionally vague under the First Amendment, and violate the North Carolina Constitution.

In February of 2011, representatives of CAI met with a representative of the State Bar concerning CAI's plan to provide its members with legal advice and services. (ECF No. 41 ¶¶ 5–7.) In April of 2013, CAI requested that the State Bar render an opinion on

whether its proposed plan to provide legal advice and certain legal services to its members would be considered the unauthorized practice of law. (ECF No. 42 ¶¶ 7–9.) On May 28, 2013, the State Bar issued a proposed ethics decision, notifying CAI that its plan would be in violation of the UPL Statutes and recommending as an alternative that CAI consider a pre-paid legal or group services plan. (*See* ECF No. 42-1; ECF No. 42-2.) On January 23, 2015, CAI filed this lawsuit, seeking, among other relief, a preliminary and permanent injunction enjoining State Prosecutors from enforcing the UPL Statutes against CAI, claiming that those statutes prevent its members from receiving the full extent of information and services they need and want in a cost-efficient manner, in violation of the United States and North Carolina Constitutions. (ECF No. 1 ¶ 43.)

## II.     THE UNAUTHORIZED PRACTICE OF LAW STATUTES

Sections 84-1 through 84-10 of the North Carolina General Statutes govern the unauthorized practice of law in North Carolina. Section 84-2.1 defines the practice of law, in pertinent part, as "performing any legal service for any other person, firm or corporation, with or without compensation, specifically including . . . assisting by advice, counsel, or otherwise in any legal work; and . . . advis[ing] or giv[ing] opinion upon the legal rights of any person, firm or corporation." N.C. Gen. Stat. § 84-2.1 (2015). Section 84-4 prohibits the practice of law by "any person or association of persons, except active members of the Bar of the State of North Carolina." *Id.* § 84-4. Section 84-5 makes it "unlawful for any corporation to practice law[,] . . . hold itself out to the public or advertise as being entitled to practice law[,] . . . draw agreements[] or other legal

3

documents, . . . or give legal advice." *Id.* § 84-5. Under the statutes governing the unauthorized practice of law, the State's district attorneys are responsible for bringing suit to enjoin persons and corporations from violating these statutes. *See id.* § 84-7. The State's district attorneys also have a statutory duty to bring criminal charges against any person or corporation that has violated Sections 84-4 through 84-8.[1] *Id.* § 84-7. Violation of these statutes is punishable as a Class 1 misdemeanor. *Id.* § 84-8.

## III. MOTION FOR PRELIMINARY INJUNCTION

Based on CAI's allegations in its Complaint that the UPL Statutes violate its constitutional rights, CAI moves this Court for a preliminary injunction to enjoin State Prosecutors as well as all of their agents, affiliates, officers, and employees from taking any action that would interfere with CAI (1) offering or delivering to its members—through CAI employees who are licensed to practice law in North Carolina—legal advice and services and (2) publicly advertising such legal advice and services for its members.

### A. Legal Standard

A preliminary injunction is an extraordinary remedy involving the exercise of a very far-reaching power that is only to be employed in the limited circumstances that demand it. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008); *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 525 (4th Cir. 2003)*, abrogated on other grounds by eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006). Whether to grant this relief is

---

[1] The State's district attorneys are required to bring criminal charges upon notification from any member of the State Bar that any person or corporation is violating Sections 84-4 to 84-8 of the North Carolina General Statutes. N.C. Gen. Stat. § 84-7.

in the sound discretion of the court. *Winter*, 555 U.S. at 24. Courts generally employ preliminary injunctions for the limited purpose of preserving the status quo during the course of litigation in order to prevent irreparable harm and to preserve the ability of the court to render meaningful relief on the merits. *Microsoft*, 333 F.3d at 525. The Fourth Circuit has defined the status quo as the "last uncontested status between the parties which preceded the controversy." *Pashby v. Delia*, 709 F.3d 307, 320 (4th Cir. 2013) (quoting *Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 378 (4th Cir. 2012)). The party seeking a preliminary injunction bears the burden of justifying such relief. *Wagner v. Bd. of Educ.*, 335 F.3d 297, 302 (4th Cir. 2003). To prevail on a motion for preliminary injunction, a party must establish "[1] that [it] is likely to succeed on the merits, [2] that [it] is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in its favor, and [4] that an injunction is in the public interest." *Winter*, 555 U.S. at 20. "[A] clear showing" of likelihood of success on the merits and irreparable harm is required in addition to satisfying the other factors before a preliminary injunction can be entered. *Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342, 346–47 (4th Cir. 2009), *vacated on other grounds*, 559 U.S. 1089 (2010).

Such a remedy "is a matter of equitable discretion; it does not follow from success on the merits as a matter of course." *Winter*, 555 U.S. at 32. "In each case, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" *Id.* at 24 (quoting *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 542 (1987)). In doing so, the Supreme Court has instructed federal courts to "pay particular regard for the public consequences in

5

employing the extraordinary remedy of injunction." *Id.* Even in cases where a plaintiff has shown likelihood of success on the merits and irreparable harm, the balance of equities and the public interest factors can weigh in favor of denying a preliminary injunction. *See id.* at 23–24, 31 n.5.

## B. Analysis

Before turning to the four factors, as enunciated by the Supreme Court and Fourth Circuit, that a plaintiff must satisfy to prevail on a motion for preliminary injunction, the Court must briefly address the relief CAI seeks in this action. As stated above, the purpose of a preliminary injunction is to preserve the status quo to prevent irreparable harm and allow the Court to enter final, meaningful relief on the merits. The injunction that CAI seeks will necessarily alter the status quo rather than preserve it. The last uncontested status between the parties before the controversy, as the Fourth Circuit has defined status quo, is as follows: the UPL Statues, which prohibit the corporate practice of law, have been in existence in some form in North Carolina since 1931, for more than 80 years, with certain notable exceptions.[2] CAI has been in existence since 1963, for more than 50 years.[3] While CAI now wishes to provide legal advice and services to its members without the threat of prosecution, it has never been able to do so. To grant

---

[2] *See* N.C. Code § 199(a) (1935) (current version at N.C. Gen. Stat. § 84-5); N.C. Gen. Stat. § 84-5.1 (listing exceptions).

[3] *See Articles of* Incorporation of Capital Associated Industries, Inc. (1963), https://www.secretary.state.nc.us/Search/filings/4911717 (download "Articles of Incorporation"). Although neither party has made this document part of the record, the court may take judicial notice of it. *See Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).

CAI's requested relief and allow it to now provide legal advice and services to its members without threat of prosecution is in fact an alteration of the status quo. The Court must consider that fact, along with the other factors, in determining whether to grant CAI the extraordinary relief requested.

1. Likelihood of Success on the Merits

a. First Amendment Right of Association Claim

CAI brings this as-applied challenge to the UPL Statutes, alleging six constitutional claims.[4] Although CAI acknowledged all six of its claims at oral argument and stated that the Court need only find likelihood of success on one of its claims, it argued only its second claim, that the UPL Statutes, as applied to CAI, violate its First Amendment right of association by prohibiting it from providing legal advice and services to its members. CAI relied on *NAACP v. Button*, 371 U.S. 415 (1963), *Brotherhood of Railroad Trainmen v. Virginia ex rel. Virginia State Bar*, 377 U.S. 1 (1964), *United Mine Workers of America, District 12 v. Illinois State Bar Ass'n*, 389 U.S. 217 (1967), *United Transportation Union v. State Bar of Michigan*, 401 U.S. 576 (1971), and *In re Primus*, 436 U.S. 412 (1978), as support for its right of association claim. In doing so, CAI stated that it was "the clearest and the shortest path to the injunction [it] seek[s]." (ECF No. 47 at 10:6–7.) The Court disagrees. A careful reading of the cases

---

[4] Specifically, CAI claims that the UPL States violate its rights under (1) the Fourteenth Amendment because they are arbitrary and capricious; (2) the First Amendment by infringing on its right of association; (3) the free speech clause of the First Amendment; (4) the First and Fourteenth Amendments because what constitutes "legal advice" is impermissibly vague; (5) the First Amendment by prohibiting it from advertising legal services to its members; and (6) the North Carolina Constitution by granting an exclusive privilege to a particular class of licensed attorneys. (*See* ECF No. 1 at 2–3.)

7

relied upon by CAI does not compel a finding that CAI has met its burden of demonstrating a "clear showing" of likelihood of success on the merits so as to warrant a preliminary injunction.

In *Button*, the Supreme Court held that Virginia could not prohibit the NAACP from soliciting prospective litigants, stating, "In the context of NAACP objectives, litigation is not a technique of resolving private differences; it is a means for achieving the lawful objectives of equality of treatment by all government, federal, state and local, for the members of the Negro community in this country. It is thus a form of political expression." 371 U.S. at 429. The Court discussed at length the legal practices of the NAACP—including its goals, objectives, and funding—and recognized that no attorney received direct compensation from the members or clients they assisted in litigation. *See id.* at 419–22. In observing that the NAACP had engaged in its solicitation activities "openly for many years," *id.* at 423, the Court noted that the record was devoid of any evidence of the evils Virginia sought to limit as applied to the NAACP's solicitation activities, "partly because no monetary stakes [were] involved, and so there [was] no danger that the attorney [would] desert or subvert the paramount interests of his client to enrich himself or an outside sponsor." *Id.* at 443–44. The Court drew a sharp distinction between activities characterized as "oppressive, malicious, or avaricious use of the legal process for purely private gain" and activities of the NAACP, stating that "[r]esort to the courts to seek vindication of constitutional rights is a different matter." *Id.* at 443. *Button* is the first of a series of Supreme Court decisions that make clear that the First

Amendment of the United States Constitution protects collective activity to enforce constitutional rights through litigation.

*Button* was followed by *Trainmen*, where the Supreme Court held that Virginia could not prevent union members from "gather[ing] together for the lawful purpose of helping and advising one another in asserting the rights Congress gave them in . . . the Federal Employers' Liability Act." 377 U.S. at 5. The Court discussed the goal of the federal act, which was "to provide for recovery of damages for injured railroad workers and their families." *Id.* at 3. However, the Court noted that the federal statute "was not enough to assure that the workers would receive the full benefit of the compensatory damages Congress intended they should have." *Id.* The record showed that injured workers and their families "often fell prey . . . to persuasive claims adjusters eager to gain a quick and cheap settlement for their railroad employers, or . . . to lawyers . . . not competent to try these lawsuits against the able and experienced railroad counsel." *Id.* at 3–4. As a result, the union established a legal aid department to assist its members who had become injured with their claims by advising them to obtain legal advice before settling their claims and recommending them to competent lawyers to handle such claims. *Id.* at 4. The Court noted that the union's referral program was not ambulance chasing and distinguished it from anything that could be described as "commercialization of the legal profession." *Id.* at 6. The Court then explained that within the context of the union's legal referral program, those interests protected by the right of association include "the right of individuals . . . to be fairly represented in lawsuits authorized by Congress to effectuate a basic public interest." *Id.* at 7. The Court stated that "[l]aymen

9

cannot be expected to know how to protect their rights when dealing with practiced and carefully counseled adversaries," which would obviously include their employers. *Id.* As applied to the union, the Court rejected Virginia's purported interests in prohibiting the union from carrying out its legal referral plan. *Id.* at 8. Central to the Supreme Court's holding was that preventing union workers from using their cooperative plan to advise each other infringed on their ability to gain access to the courts to vindicate their legal rights. *Id.* at 7. "The right to petition the courts cannot be so handicapped." *Id.*

Then followed *Mine Workers*, in which the Supreme Court held that the right of association permits a union to hire a salaried lawyer to represent its members in workers' compensation claims. 389 U.S. at 221–22. Similar to *Trainmen*, the record showed that Illinois had passed a workers' compensation statute but the mine workers were being deprived of the statute's full benefits. *Id.* at 219. The workers "were required to pay forty or fifty per cent of the amounts recovered in damage suits, for attorney fees." *Id.* In response, in 1913, the union established a legal department, hiring an attorney to represent members and their dependents "in connection with claims for personal injury and death" under Illinois' workers' compensation statute. *Id.* The Court highlighted the terms of the attorney's employment, including the scope of legal services the attorney would provide to the union's members and the fact that the attorney received no compensation from any settlement proceeds reached on behalf of any worker. *Id.* at 219–21. The record also demonstrated that in the program's many years of operation, there was not one instance of abuse, harm to clients, or "any actual disadvantage to the public or to the profession." *Id.* at 225. In holding that the right of association protected the

10

union's legal program, the Court stated, "The First Amendment would . . . be a hollow promise if it left government free to destroy or erode its guarantees by indirect restraints so long as no law is passed that prohibits free speech, press, petition, or assembly as such." *Id.* at 222. Although the union members were not prevented from associating with one another, they were prevented from availing themselves of the benefits provided by Illinois' workers' compensation statute due to excessive legal fees. The Court's focus was on protecting the right of meaningful access to the courts to redress grievances, irrespective of their nature. *Id.* at 223. Thus, the Court made clear that the right of access to the courts is not confined to matters that can be "characterized as political." *Id.* The Seventh Circuit later explained that *Mine Workers* "supports the proposition that laypersons have a right to obtain meaningful access to the courts, and to enter into associations with lawyers to effectuate that end." *Lawline v. Am. Bar Ass'n*, 956 F.2d 1378, 1387 (7th Cir. 1992).

A few years later, the Supreme Court decided *United Transportation Union*. Similar to the issues before the Court in *Trainmen*, the United Transportation Union, the successor union of the Brotherhood of Railroad Trainmen, provided its members with legal advice and other services to protect them from excessive legal fees and incompetent counsel in suits brought under the Federal Employers' Liability Act. *United Transp. Union*, 401 U.S. at 577. The union also had secured commitments from lawyers representing its members that their legal fees would be capped at no more than 25% of the recovery. *Id.* at 577. The Court rejected Michigan's injunction that prevented the union from providing its injured members with legal advice on their federal claims,

11

stating, "In *Trainmen* we upheld the commonsense proposition that such activity is protected by the First Amendment." *Id.* at 580. One of Michigan's justifications for the injunction was that Michigan sought to prohibit fee sharing between the union and the recommended attorney. *Id.* at 583. The Court also rejected this justification, explaining that "[s]uch activity is not even suggested in the complaint. There is not a line of evidence concerning such practice in the record in this case." *Id.* The Court found no problem with the arrangement the union had negotiated with attorneys representing its members, which capped their legal fees at no more than 25% of recovery. As in *Mine Workers*, the Court explained that "[t]he Union . . . sought to protect its members against the same abuse by limiting the fee charged by recommended attorneys. It is hard to believe that a court . . . would deny a . . . union . . . the right to protect its injured members, and their widows and children, from the injustice of excessive fees at the hands of inadequate counsel." *Id.* at 585. According to the Court, "[a]t issue is the basic right to group legal action" to secure "freedoms guaranteed by the Constitution. *Id.* In so noting, the Supreme Court stated that "[t]he common thread running through [its] decisions in [*Button*, *Trainmen*, and *Mine Workers*] is that collective activity undertaken to obtain meaningful access to the courts is a fundamental right within the protection of the First Amendment." *Id.* The Supreme Court's interpretation of *Button* and its progeny "comports with the traditional understanding that freedom of association provides 'a right to join with others to pursue goals independently protected by the first amendment.'" *Lawline,* 956 F.2d at 1387.

Several years following *United Transportation Union*, the Court relied on *Button* in finding First Amendment protection in the solicitation activities of the ACLU. *Primus*, 436 U.S. at 426–32. At issue in *Primus* was South Carolina's decision to discipline an ACLU attorney for soliciting a woman for redress of an allegedly unconstitutional sterilization. *Id*. at 421–22. The Court rejected the state's efforts "to draw a meaningful distinction between the ACLU and the NAACP." *Id.* at 427. For the ACLU, as it was for the NAACP, "'litigation is not a technique of resolving private differences'; it is 'a form of political expression' and 'political association.'" *Id.* at 428 (quoting *Button*, 371 U.S. at 429, 431). The Court therefore rejected South Carolina's justification for disciplining the ACLU attorney under its disciplinary rules. The Court explained that the record did not support "undue influence, overreaching, misrepresentation, or invasion of privacy," as the solicitation was not in-person but rather through a follow-up letter providing information that would allow the potential litigant to make "an informed decision about whether to authorize litigation." *Id.* at 435. Although the ACLU received an award of counsel fees in cases in which it was successful, the Court noted that neither the ACLU nor its attorneys are motivated by financial gain, as the motivation for the ACLU's litigation is "vindicating civil liberties." *Id.* at 429–30. Nor did the record show a serious conflict of interest or problems related to the attorney-client relationship. *Id.* at 436. Although the Court stated these interests may be justifiable in circumstances where a commercial transaction is proposed, they were not sufficiently tailored in application to organizations such as the ACLU. *Id.* at 437–38. "[C]onsiderations of undue commercialization of the legal profession are of marginal force where . . . a nonprofit

13

organization [the ACLU] offers its services free of charge to individuals who may be in need of legal assistance and may lack the financial means and sophistication necessary to tap alternative sources of such aid." *Id.* at 437.

While this Court does not foreclose the possibility that the activities CAI and its members wish to undertake may be entitled to First Amendment protection, the record before the Court at this time does not support the conclusion that the line of cases starting with *Button* offers a clear showing of likelihood of success on the merits of CAI's right of association claim. Unlike the clear constitutional objectives advanced by the foregoing cases, CAI has indicated that, among other things, it is being precluded "from earning revenues by employing licensed attorneys to provide legal advice and services to its members." (ECF No. 1 ¶ 98.) Further, CAI has not demonstrated that its members are being deprived, either directly or indirectly, of access to the courts—a fundamental right identified in *Button* and its progeny. (*See* ECF Nos. 15, 17–18.) Nor has CAI demonstrated that it or its members are being deprived of the ability to advance a political agenda, effectuate a basic public interest, or receive legal advice from counsel when needed. Paying more than desired for the assistance of outside counsel does not place CAI and its employer-members in the same category as union workers, minorities, or other marginalized individuals who were *actually* being denied channels to vindicate rights protected by the United States Constitution or federal law. Moreover, unlike in this case, the records in *Button, Trainmen, Mine Workers, United Transportation Union,* and *Primus* were sufficiently developed such that the goals and objectives of the organizations were clear, the legal plans were clearly defined, and the specific needs

14

addressed were those given to members by constitution or statute. These decisions reflect a thorough, fact-intensive review of the records before the Supreme Court.

While the Court recognizes that the instant motion is one for a preliminary injunction, CAI must provide this Court with a sufficient factual record to evaluate its likelihood of success on the merits. The record before the Court has not been sufficiently developed on important factual issues needed for this Court to conclude, as CAI has argued, that the desired activities of CAI and its members fall within the collective activity protected in *Button, Trainmen, Mine Workers, United Transportation Union,* and *Primus.* Virtually all of the allegations in CAI's Complaint have been denied by the State Bar in its Answer, including whether CAI is even a non-profit corporation. (*See* ECF No. 38 ¶¶ 1–44.) The lack of an adequate factual record in this case is striking, even in the context of a preliminary injunction. (*See* ECF Nos. 14–20.) This Court knows very little about CAI, including its goals and objectives, the criteria for membership, the composition of its membership, the scope of legal services it intends to offer its employer-members, and the fees associated with such services. Out of approximately 1,080 employers who allegedly make up CAI's membership across North Carolina, CAI has provided this Court with only three very short declarations from its employer-members. (*See* ECF Nos. 15, 17–18.) Exactly who these employer-companies are, their size, and their legal needs are critical issues that have not been fully developed.

Although there are no hard rules on the amount of evidence a party must submit in support of a motion for preliminary injunction, the dearth of information before this Court does not allow for meaningful review in light of the nature of the relief sought by

CAI. Not only do the declarations lack the level of specificity one would expect in such a complex case, but they also fail to demonstrate that CAI's members are being deprived of meaningful access to the courts to vindicate their legal rights. Indeed, the State Bar, not CAI, provided this Court with the only document that appears to outline in some detail the type of legal services plan CAI sought to offer its members when it approached the State Bar two years ago. (ECF No. 42-2.) This is particularly troublesome as it would appear that much of the critical evidence that would assist this Court in evaluating CAI's claims is within CAI's control, yet it has not provided such evidence to this Court. This, coupled with CAI's insistence that discovery is not necessary,[5] would suggest an effort to limit rather than develop the record upon which this Court must evaluate weighty claims of constitutional proportions.

Although CAI contends that this is an as-applied challenge, ordinarily, an as-applied challenge attacks the constitutionality of a statute "based on a developed factual record and the application of a statute to a specific person." *Educ. Media Co. at Va. Tech, Inc. v. Insley*, 731 F.3d 291, 298 n.5 (4th Cir. 2013) (quoting *Richmond Med. Ctr. for Women v. Herring*, 570 F.3d 165, 172 (4th Cir. 2009)). Even though CAI has couched its challenge as an as-applied challenge, CAI appears to be advancing a facial challenge. A plaintiff bringing a facial attack does not have to develop a factual record

---

[5] At oral argument, CAI's attorney stated that discovery is not necessary. "[W]hat discovery, what other information would be useful or necessary to the Court in coming to a decision in this case? We can think of none. The case is what it is. The facts, I think, are pretty clearly pled. There are not other facts that we think make any difference in this case. So we urge the Court to go ahead and make the decision at this point because, frankly, there isn't anything that we expect will change after this." (ECF No. 47 at 18:6–13.)

because the success of such an attack requires "'that no set of circumstances exists under which the Act would be valid,' *i.e.*, that the law is unconstitutional in all of its applications." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008). On the other hand, an as-applied challenge must be fact-specific and decided on a case-by-case basis. *Richmond Med. Ctr.*, 570 F.3d at 173 (quoting Richard H. Fallon, Jr., *As-Applied and Facial Challenges and Third-Party Standing*, 113 Harv. L. Rev. 1321, 1331 (2000)). Contrary to CAI's argument that no discovery is needed, an as-applied challenge requires a "concrete factual circumstance," and thus, it is necessary to have a developed factual record. *Id.* at 172, 180.

  b.  CAI's Other Claims

While CAI declined to argue its remaining claims at the hearing on the preliminary injunction, the Court is not persuaded that those claims would fare any better in light of the sparse record. CAI's first claim is that prohibiting it from offering legal advice and services violates its substantive due process rights under the Fourteenth Amendment because North Carolina cannot show that such a prohibition is rationally related to a legitimate government interest. At a minimum, "[d]ue process requires that all laws . . . be 'rationally related to a legitimate governmental objective.'" *Stuart v. Loomis*, 992 F. Supp. 2d 585, 611 (M.D.N.C. 2014) (quoting *Multimedia Publ'g Co. of S.C. v. Greenville–Spartanburg Airport Dist.*, 991 F.2d 154, 159 (4th Cir. 1993)). "Statutes subject to rational-basis review 'bear[ ] a strong presumption of validity . . . .'" *Bostic v. Schaefer*, 760 F.3d 352, 393 (4th Cir. 2014) (alteration in original). As explained by the Fourth Circuit, "[t]his standard is quite deferential." *Wilkins v. Gaddy*,

17

734 F.3d 344, 347 (4th Cir. 2013). "[T]he fit between the enactment and the public purposes behind it need not be mathematically precise." *Id.* at 348. Even when those purposes are based on "rational speculation unsupported by evidence or empirical data," the statute will pass constitutional scrutiny. *Id.* (quoting *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993)). A statute must be upheld on rational basis review if "there is any reasonably conceivable state of facts" to support it. *Moore-King v. Cty. of Chesterfield*, 708 F.3d 560, 572 (4th Cir. 2013) (quoting *Greenville Women's Clinic v. Bryant*, 222 F.3d 157, 172 (4th Cir. 2000)).

As the State Bar points out, there are rational reasons for prohibiting the corporate practice of law. (*See* ECF No. 40 at 10–16.) The State Bar notes, among other things, that there is the "potential for conflicts of interest and loyalty when an entity that may not be controlled by lawyers is responsible for the representation of a client" (*id.* at 10); the financial interests of the corporation may "require an increase or decrease in litigation expenditures" (*id.* at 11); "disclosure requirements may risk violation of the attorney-client privilege or work product doctrine" (*id.*); and the attorney's professional obligation to make sure that the fees are reasonable may be compromised by the corporation (*id.*). Unlike *Button*, *Trainmen*, *Mine Workers*, *United Transportation Union*, and *Primus*, where it was clear on those records that the ills the government sought to limit did not manifest themselves in a sufficient manner to justify the government's regulations, the record before this Court does not permit such an evaluation concerning CAI. Due to the absence of a sufficient factual record, CAI has failed to rebut the presumption of validity under a rational basis review of the UPL Statutes.

CAI's third claim is that the UPL Statutes violate its free speech rights under the First Amendment. CAI argues that "legal advice is pure speech." (ECF No. 20 at 20.) CAI further argues that the UPL Statutes "censor that speech based on its content . . . and the speaker's identity" and, thus, cannot withstand strict or intermediate constitutional scrutiny. (*Id.* at 19, 23.)

Similar to the other claims discussed, this Court is unable to evaluate the merits of CAI's free speech claim. CAI claims that the UPL Statutes infringe on its free speech rights because it cannot give "legal advice" to its members. However, CAI desires to provide legal services that extend beyond just rendering "legal advice." Therefore, whether the UPL Statutes as applied to CAI regulate speech or the practice of law is not clear on this record. It is well established that "[a] statute that governs the practice of an occupation is not unconstitutional as an abridgment of the right to free speech, so long as 'any inhibition of that right is merely the incidental effect of observing an otherwise legitimate regulation.'" *Accountant's Soc'y of Va. v. Bowman*, 860 F.2d 602, 604 (4th Cir. 1988) (quoting *Underhill Assocs., Inc. v. Bradshaw*, 674 F.2d 293, 296 (4th Cir. 1982)). Moreover, assuming that there is some protected speech that is being regulated by the UPL Statutes, the Court must still evaluate North Carolina's interest in applying the UPL Statutes to CAI. The scope of legal services CAI seeks to offer, along with the other missing facts as outlined above, are therefore very important to any constitutional analysis in this case, irrespective of the level of scrutiny that applies.

As it relates to CAI's fourth claim that "legal advice" as defined in the UPL Statutes is unconstitutionally vague, the Complaint and declarations provided by CAI fail

to suggest that CAI is unable to discern what constitutes "legal advice." To the contrary, these materials seem to indicate that CAI has been able to determine when the advice it gives to its members crosses the line into the area of "legal advice." (*See* ECF No. 15 ¶ 5; ECF No. 17 ¶ 4; ECF No. 18 ¶ 4.) That issue, like the rest of CAI's federal constitutional arguments, will need to be further developed. In addition, the Court need not address CAI's fifth claim that the UPL Statutes violate its First Amendment right to advertise since that issue is directly tied to, and dependent upon, the larger question of whether CAI has the right to provide legal services to its members.

Finally, federalism and comity principles counsel against reaching the merits of CAI's sixth claim—that the UPL Statutes violate the North Carolina Constitution—on a motion for a preliminary injunction, as that claim turns on an important issue confined to North Carolina law.[6] *See 75–80 Props., LLC v. Bd. of Cty. Comm'rs*, No. RDB 09-2977, 2010 WL 917635, at *5 (D. Md. Mar. 10, 2010) ("Where a pendent state claim turns on novel or unresolved questions of state law, especially where those questions concern the state's interest in the administration of its government, principles of federalism and comity may dictate that these questions be left for decision by the state courts." (quoting

---

[6] The North Carolina Supreme Court upheld the UPL Statues under the North Carolina Constitution in 1936 and 1986. *See Gardner v. N.C. State Bar*, 341 S.E.2d 517, 523 (N.C. 1986); *Seawell v. Carolina Motor Club, Inc.*, 184 S.E. 540, 544 (N.C. 1936). The North Carolina Business Court has also upheld the UPL Statutes against a challenge under the monopoly clause of the North Carolina Constitution. *See N.C. State Bar v. Lienguard, Inc.*, No. 11 CVS 7288, 2014 WL 1365418, at *15 (N.C. Super. Ct. Apr. 4, 2014). Though CAI attempts to distinguish these cases, the fact remains that the North Carolina courts have upheld the UPL Statutes under the North Carolina Constitution.

*Seabrook v. Jacobson*, 153 F.3d 70, 72 (2d Cir. 1998))); *see also Arrington v. City of Raleigh*, 369 F. App'x. 420, 423 (4th Cir. 2010).

In sum, CAI has failed to demonstrate that *Button*, *Trainmen*, *Mine Workers*, *United Transportation Union*, and *Primus* provide a clear path to the injunction that it seeks. While CAI has articulated broad principles from those cases, on the record before the Court, it has failed to establish the application of those principles to CAI and its members. Further, with such a skeletal record, the Court is unable to engage in a meaningful review of the merits of CAI's claims. Accordingly, the Court concludes that CAI has failed to make a "clear showing" of likelihood of success on the merits. Many courts have also denied a motion for preliminary injunction where the plaintiff has failed to make a "clear showing" of likelihood of success on the merits due to an undeveloped record. *See, e.g.*, *Dao Travels, LLC v. Charleston Black Cab Co.*, No. 2:14-cv-01967-PMD, 2015 WL 631137, at *6 (D.S.C. Feb. 13, 2015) (denying a motion for preliminary injunction due to concerns about the limited record before the court); *St. Jude Med. S.C., Inc. v. Janssen-Counotte*, No. A-14-CA-877-SS, 2014 WL 7237411, at *14 (W.D. Tex. Dec. 17, 2014) (noting that there are "far too many open questions and disputed issues of fact to conclude at this juncture" that the plaintiff had shown a substantial likelihood of success on the merits with respect to the motion for preliminary injunction); *Jones v. Hamilton Cty.*, 891 F. Supp. 2d 870, 889 (E.D. Tenn. 2012) (holding that "the record before the Court is far too underdeveloped to adequately analyze" the plaintiff's as-applied challenge to the county's prayer policy under the First Amendment); *Nat'l Black Police Ass'n v. D.C. Bd. of Elections & Ethics*, 858 F. Supp. 251, 258 (D.D.C. 1994)

("Absent a more developed factual record, the Court cannot find that plaintiffs have carried their burden of showing a likelihood of success on the merits.").

###### 2. Irreparable Harm

Although CAI is correct that the loss of First Amendment rights constitutes irreparable harm, *Newsom v. Albemarle Cty. Sch. Bd.*, 354 F.3d 249, 261 (4th Cir. 2003), merely asserting a constitutional claim as CAI has done "is insufficient to automatically trigger a finding of irreparable harm." *KM Enters., Inc. v. McDonald*, No. 11-cv-5098 (ADS)(ETB), 2012 WL 540955, at *3 (E.D.N.Y. Feb. 16, 2012) (quoting *Donohue v. Paterson*, 715 F. Supp. 2d 306, 315 (N.D.N.Y. 2010)); *see also Pub. Serv. Co. of N.H. v. Town of West Newbury*, 835 F.2d 380, 382 (1st Cir. 1987). The Fourth Circuit has held that within the context of constitutional violations, "a plaintiff's claimed irreparable harm is 'inseparably linked' to the likelihood of success on the merits." *WV Ass'n of Club Owners & Fraternal Servs., Inc. v. Musgrave*, 553 F.3d 292, 298 (4th Cir. 2009); *Y.K. Enters., Inc. v. City of Greensboro*, No. 1:07CV0289, 2007 WL 2781706, at *3 (M.D.N.C. Sept. 21, 2007). Because CAI has failed to clearly show that it would likely prevail on the merits, for the reasons outlined above, the Court must also conclude that the same holds true for CAI's argument that it would likely suffer irreparable harm.

Even if this Court had found a likelihood of success on the merits, it is questionable whether CAI could establish irreparable harm if denied the injunctive relief requested. CAI is not before the Court in exigent circumstances. CAI did not bring this action due to a recent change in the law; nor is this matter before the Court due to deteriorating circumstances created by the State. North Carolina has prohibited the

corporate practice of law for over 80 years. *See Seawell v. Carolina Motor Club, Inc.*, 184 S.E. 540, 544 (N.C. 1936).[7] Throughout CAI's 50 years of existence, it has never practiced law. Further, the declarations offered by CAI do not support its claim of irreparable harm. CAI "views this lawsuit as a necessary next step because persistent efforts to have a debate and open discussion leading to a change in the law have been unsuccessful in the General Assembly of North Carolina."[8] (ECF No. 16 ¶ 6.) Only after these attempts failed did CAI file this lawsuit. Nor does CAI's delay in bringing this suit bolster its claim that it will suffer irreparable harm in the absence of a preliminary injunction. *See Doe v. Banos*, 713 F. Supp. 2d 404, 415 n.15 (D.N.J. 2010) (explaining that the plaintiff's lack of urgency in bringing the action undermines his claim of irreparable harm to his First Amendment rights); *Utah Gospel Mission v. Salt Lake City Corp.*, 316 F. Supp. 2d 1201, 1220–21 (D. Utah 2004) (noting that the plaintiffs' unnecessary delay in seeking a preliminary injunction tends to indicate their First Amendment rights will not be irreparably harmed in the absence of injunctive relief); *Costello v. McEnery*, 767 F. Supp. 72, 78 (S.D.N.Y. 1991) (explaining that the plaintiff's delay in seeking enforcement of his constitutional rights "tends to indicate at least a reduced need for such drastic, speedy action"); *Manhattan State Citizens' Grp., Inc. v.*

---

[7] In *Seawell*, the Supreme Court upheld Section 199(a) of the 1935 North Carolina Code, the predecessor statute of Section 84-5 of the North Carolina General Statutes. 184 S.E. at 544.

[8] Before approaching the North Carolina General Assembly, CAI met with representatives from the State Bar to seek the State Bar's support for its legal services plan. (ECF No. 41 ¶¶ 3–5.) In 2011 and 2013, bills were introduced in the North Carolina General Assembly to amend the UPL Statutes as CAI indicated in its meeting with the State Bar. (*Id.* ¶¶ 8–11.) If it is a change in the law that CAI seeks, rather than a vindication of constitutional rights, CAI must follow the normal adjudicatory process.

*Bass*, 524 F. Supp. 1270, 1276 (S.D.N.Y. 1981) (explaining that "[i]t is an unfair imposition on the defendants and on the Court to force an unnecessarily hasty decision on such an important question of constitutional law" when the plaintiff's counsel unnecessarily waited fifteen months to file suit). Courts must be vigilant to ensure that this extraordinary remedy is not used to manufacture a sense of urgency where none exists so as to allow the case to leapfrog earlier filed actions that may be of equal or greater urgency.

### 3. Balance of Equities and Public Interest

The Court rejects CAI's argument that no harm will come to the State by preliminarily enjoining State Prosecutors from enforcing the UPL Statutes and that such an injunction is in the public interest. Entering temporary relief in favor of CAI based on speculation as to the facts due to an undeveloped record has the potential to create unnecessary uncertainty within the State, the State Bar, the general public, and CAI and its members.

That North Carolina has "broad power to regulate the practice of law is, of course, beyond question." *See Mine Workers*, 389 U.S. at 222. North Carolina has delegated to the State Bar the responsibility of regulating the practice of law in North Carolina. However, the State Bar's ability to meet its obligations, which include protecting the public, would be severely hampered by a ruling in favor of CAI that does not reflect finality. In particular, the Court's interim ruling would implicate a number of rules of ethics and professional responsibility, with the impact extending much further than CAI and its members. Specifically, the Court's interim ruling would implicate Rule 5.4(a) of

the Rules of Professional Conduct, which currently prohibits lawyers from sharing legal fees with non-lawyers. Similarly, the Court's interim ruling would implicate Rule 5.4(b), which prohibits a person or entity paying a lawyer to render legal services to another person or entity from directing or regulating the lawyer's judgment in rendering such legal services. Attorney-client issues related to confidentiality would also be implicated if the Court grants CAI's motion for preliminary injunction.

Having the State Bar address these issues without the benefit of a final ruling on the merits will impair the State Bar's ability to protect the public. The Fourth Circuit has stated that "the public interest . . . is served by adherence to the State statute unless and until it is declared invalid." *Telvest, Inc. v. Bradshaw*, 618 F.2d 1029, 1036 (4th Cir. 1980). North Carolina has a long history of personal representation by attorneys of clients as opposed to corporate representation. *See Gardner v. N.C. State Bar*, 341 S.E.2d 517, 522–23 (N.C. 1986). Although upholding constitutional rights serves the public interest, as CAI notes, this case deserves to be addressed in a deliberate and thoughtful manner, which will ensure fairness, finality, and that no harm comes to the public by any changes to the UPL Statutes.

In sum, CAI has failed to demonstrate a clear showing of likelihood of success on the merits and that it will suffer irreparable harm if denied a preliminary injunction. The Fourth Circuit has made clear that a preliminary injunction is an extraordinary remedy, only to be employed in those limited circumstances that *clearly* call for it. Based on this record, or lack thereof, CAI has failed to show that its case is one calling for such extraordinary relief. Where, as in this case, "substantial issues of constitutional

dimensions" are before the court, those issues "should be fully developed at trial in order to [e]nsure a proper and just resolution." *Wetzel v. Edwards*, 635 F.2d 283, 291 (4th Cir. 1980); *see also Price v. City of Fayetteville*, No. 5:13-CV-150-FL, 2013 WL 1751391, at *4 (E.D.N.C. Apr. 23, 2013) ("'On an application for preliminary injunction, the court is not bound to decide doubtful and difficult questions of law or disputed questions of fact,' and '[a]s a prerequisite to the issuance of an interlocutory injunction, . . . [t]here must be no disputed issues of fact.'" (alterations in original) (quoting *Gantt v. Clemson Agric. Coll. of S.C.*, 208 F. Supp. 416, 418–19 (W.D.S.C. 1962))). For all the reasons outlined above, CAI's motion for preliminary injunction must be denied.

## IV. MOTION TO DISMISS

State Prosecutors move to dismiss CAI's Complaint pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction, Rule 12(b)(6) for failure to state a claim, and Rule 12(b)(7) for failure to join a necessary party under Rule 19.

### A. Legal Standards

#### 1. Subject Matter Jurisdiction pursuant to Rule 12(b)(1)

Subject matter jurisdiction is a threshold question that relates to the power of the court to hear a case and must be resolved before a court addresses the merits of a case. *See Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 479–80 (4th Cir. 2005). The court has an independent obligation to assess whether it has subject matter jurisdiction, irrespective of whether it is raised by the parties. *Wye Oak Tech., Inc. v. Republic of Iraq*, 666 F.3d 205, 218 (4th Cir. 2011). The court's subject matter jurisdiction is limited in that the court "possess[es] only the jurisdiction authorized . . . by

26

the United States Constitution and by federal statute." *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009). When subject matter jurisdiction is at issue, the court can make appropriate inquiry outside of the pleadings to ensure that it has the authority to entertain the case. *Id.* at 348. The burden of proving subject matter jurisdiction rests with the plaintiff, the party asserting that jurisdiction exists. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). If the plaintiff fails to prove subject matter jurisdiction, the court must dismiss the action. *Vuyyuru*, 555 F.3d at 347.

A court may exercise jurisdiction in a federal declaratory judgment proceeding when (1) the complaint shows that there is an actual controversy between the parties, (2) the claim arises under federal law, and (3) the exercise of jurisdiction is not an abuse of discretion. *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 592 (4th Cir. 2004).

### 2. Failure to State a Claim pursuant to Rule 12(b)(6)

The purpose of a motion made under Rule 12(b)(6) of the Federal Rules of Civil Procedure "is to test the sufficiency of a complaint." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a motion to dismiss, a complaint must contain sufficient factual matter which, if accepted as true, states "a cognizable cause of action, 'even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely.'" *Brown v. Target, Inc.*, No. ELH-14-00950, 2015 WL 2452617, at *8 (D. Md. May 20, 2015) (alteration in original) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)); *see Coleman v. Poff*, 497 F. App'x. 337, 339 (4th Cir. 2012). Although a plaintiff need only plead a short and plain statement of the claim establishing that he or

27

she is entitled to relief, *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992), "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor is the court required to accept a plaintiff's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Twombly*, 550 U.S. at 555. In other words, the complaint must contain sufficient facts to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

A dismissal under Rule 12(b)(6) is appropriate only when the complaint "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Brown*, 2015 WL 2452617, at *9 (quoting *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013)); *see also Brockington v. Boykins*, 637 F.3d 503, 505 (4th Cir. 2011) ("[D]ismissal is inappropriate unless, accepting as true the well-pled facts in the complaint and viewing them in the light most favorable to the plaintiff, the plaintiff is unable to 'state a claim . . . .'" (quoting *Twombly*, 550 U.S. at 570)).

### 3. Failure to Join a Necessary Party pursuant to Rule 12(b)(7)

Rule 12(b)(7) of the Federal Rules of Civil Procedure allows for dismissal when a plaintiff has failed to join a necessary party under Rule 19 of the Federal Rules of Civil Procedure. Under Rule 19, a required party must be joined as a party to the action if feasible. Fed. R. Civ. P. 19(a)(1); *see Maryland v. Universal Elections, Inc.*, 729 F.3d 370, 379 (4th Cir. 2013). A party is required if the court, "in that person's absence, . . . cannot accord complete relief among existing parties." *Universal Elections*, 729 F.3d at 379. A party is also required if

that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

*Id.* The Fourth Circuit has cautioned that dismissal of a case for failure to join a required party is a drastic remedy. *Teamsters Local Union No. 171 v. Keal Driveaway Co.*, 173 F.3d 915, 918 (4th Cir. 1999).

## B. Subject Matter Jurisdiction

State Prosecutors argue that CAI has failed to establish a case and controversy pursuant to Article III of the United States Constitution. (ECF No. 10 ¶ 2.) Article III "confines the federal courts to adjudicating actual 'cases' and 'controversies.'" *Allen v. Wright*, 468 U.S. 737, 750 (1984). The Supreme Court has identified standing, ripeness, and the political question doctrine as "doctrines that cluster about Article III." *Id.* The Court addresses each of these doctrines in turn.

### 1. Article III Standing

State Prosecutors assert that CAI lacks Article III standing because CAI failed to allege any facts that would suggest State Prosecutors had anything to do with the proposed ethics decision the State Bar issued to CAI. (ECF No. 11 at 3.) State Prosecutors further assert that CAI has failed to allege facts that would "imply that defendants have ever taken any action or made any statements concerning plaintiff's business, or that defendants have any intention of ever taking any action or making any

statements under N.C.G.S. §§ 84-4 and 84-5 against the corporation or its (unnamed) attorneys." (*Id.*)

Although the State Bar and State Prosecutors are tasked with enforcing the UPL Statutes, the State Bar's proposed ethics opinion is not the source of harm alleged by CAI. Only State Prosecutors may initiate criminal proceedings against a party that has violated the UPL Statutes. N.C. Gen. Stat. § 84-7. The State Bar may investigate and enjoin practices that constitute the unauthorized practice of law but have no authority to criminally prosecute violations. *Id.* § 84-37. It is CAI's fear of criminal prosecution under the UPL Statutes that is the source of harm alleged by CAI. (*See* ECF No. 1 ¶¶ 40, 44.)

To determine whether a plaintiff has Article III standing, three elements must be satisfied: injury-in-fact, causation, and redressability. *Cooksey v. Futrell*, 721 F.3d 226, 234–35 (4th Cir. 2013). The Supreme Court has also explained that in First Amendment cases, the rules of standing are somewhat relaxed. *See Sec'y of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 956, 957 n.7 (1984); *Cooksey*, 721 F.3d at 235. This is so because "the concern that constitutional adjudication be avoided whenever possible may be outweighed by society's interest in having the statute challenged." *Munson*, 467 U.S. at 956; *see Lopez v. Candaele*, 630 F.3d 775, 781 (9th Cir. 2010) ("First Amendment cases raise 'unique standing considerations' that 'tilt[ ] dramatically toward a finding of standing.'" (alteration in original) (citation omitted)). "The leniency of First Amendment standing manifests itself most commonly in the doctrine's first element: injury-in-fact." *Cooksey*, 721 F.3d at 235.

30

Courts define injury-in-fact as "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). However, in First Amendment cases, the injury-in-fact element is often satisfied when a party engages in self-censorship—that is, "when a claimant is chilled from exercising h[is] right to free expression." *Id.* (alteration in original) (quoting *Benham v. City of Charlotte*, 635 F.3d 129, 135 (4th Cir. 2011)). The Fourth Circuit has explained:

> We have recognized that, to demonstrate injury in fact, it is sufficient to show that one's First Amendment activities have been chilled. Subjective or speculative accounts of such a chilling effect, however, are not sufficient. Any chilling effect must be objectively reasonable. Nevertheless, a claimant need not show she ceased those activities altogether to demonstrate an injury in fact. Government action will be sufficiently chilling when it is likely to deter a person of ordinary firmness from the exercise of First Amendment rights.

*Benham*, 635 F.3d at 135. Where, as in this case, "the State has not disclaimed any intention of enforcing [the challenged statute], [a plaintiff] need not actually violate [that statute], or be proactively threatened with prosecution prior to violation, in order to have standing to challenge its constitutionality." *Does 1–5 v. Cooper*, 40 F. Supp. 3d 657, 671–72 (M.D.N.C. 2014). A statute that "facially restricts expressive activity by the class to which the plaintiff belongs presents such a credible threat." *Cooksey*, 721 F.3d at 237 (emphasis omitted) (quoting *N.C. Right to Life, Inc. v. Bartlett*, 168 F.3d 705, 710 (4th Cir. 1999)).

It is undisputed that CAI belongs to the class of entities targeted by the UPL Statutes. It is a crime punishable as a Class 1 misdemeanor for CAI, a corporation, to

provide legal advice and services to its members.  *See* N.C. Gen Stat. § 84-8 ("Any person, corporation, or association of persons violating any of the provisions of G.S. 84-4 through G.S. 84-6 or G.S. 84-9 shall be guilty of a Class 1 misdemeanor.").  CAI has alleged that the First Amendment guarantees it the right to provide such services but that it has chosen not to do so out of fear of prosecution.  (*See* ECF No. 1 ¶¶ 4, 41–44.)  State Prosecutors have not stated that they would refrain from prosecuting CAI for violating the UPL Statutes.  Nor have State Prosecutors stated that they disagree with the State Bar's proposed ethics opinion issued to CAI.  To the contrary, State Prosecutors and the State Bar vigorously contend that CAI lacks the right to provide its members with legal advice and services.  CAI need not subject itself to criminal prosecution to establish standing to challenge the UPL Statutes.  *See N.C. Right to Life*, 168 F.3d at 710 ("When a plaintiff faces a credible threat of prosecution under a criminal statute he has standing to mount a pre-enforcement challenge to that statute.").  The Court is satisfied that CAI has alleged sufficient facts to establish injury-in-fact.

With the injury-in-fact requirement satisfied, CAI clears the other two hurdles for standing:  causation and redressability.  To satisfy the causation requirement, there must be "a causal connection between the injury and the conduct complained of that is 'fairly traceable,' and not 'the result of the independent action of some third party not before the court.'"  *Cooksey*, 721 F.3d at 238 (quoting *Frank Krasner Enters., Ltd. v. Montgomery Cty.*, 401 F.3d 230, 234 (4th Cir. 2005)).  Redressability is satisfied "where there is 'a non-speculative likelihood that the injury would be redressed by a favorable judicial decision.'"  *Id.*

32

Here, there is a causal connection between the injury of which CAI complains, *i.e.*, the alleged chilling of its rights under the First Amendment, and the conduct of which CAI complains, *i.e.*, the threat of prosecution by State Prosecutors. With respect to redressability, a favorable decision from this Court would mean that the UPL Statutes would be found to be unconstitutional as applied to CAI, and State Prosecutors would be enjoined from enforcing the UPL Statutes against CAI. CAI would thus have full redress because under such a scenario, CAI would be able to provide legal advice and services to its members without fear of prosecution. The Court concludes that CAI has alleged sufficient facts to establish causation and redressability and, thus, standing.

2. Ripeness

CAI argues that its claims are "ripe for review at once." (ECF No. 22 at 11 (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S 871, 891 (1990).) Specifically, CAI contends that its claims "pose legal, rather than factual, questions—they do not require the resolution of disputed facts." (*Id.* ("[T]here is no further action that is needed to develop a factual record or provide the Court with an appropriate question to review.").)

However, CAI has raised an as-applied rather than a facial challenge to the UPL Statutes. "Because the question of ripeness depends on the timing of the adjudication of a particular issue, it applies differently to facial and as-applied challenges." *Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1308 (11th Cir. 2009) (citation omitted); *Doe v. Va. Dep't. of State Police*, 713 F.3d 745, 761–62 (4th Cir. 2013). On an as-applied challenge, a party argues that the statute is unconstitutional as applied, after developing a sufficient factual record. *See Harris*, 564 F.3d at 1308 (explaining that an

33

as-applied challenge "necessarily requires the development of a factual record for the court to consider"). In contrast, a facial challenge, which is purportedly not the type of challenge CAI has raised, contemplates "that a statute always operates in an unconstitutional manner." *Doe*, 713 F.3d at 762. Such a challenge therefore does not require the development of a factual record prior to adjudication by a court. *Harris*, 564 F.3d at 1308.

To the extent that CAI presses for a decision on the merits, it must sufficiently develop the record before its claims are ripe for review by this Court. *See Ostergren v. Cuccinelli*, 615 F.3d 263, 288 (4th Cir. 2010) ("[T]he doctrine of ripeness prevents judicial consideration of issues until a controversy is presented in clean-cut and concrete form . . . ." (quoting *Miller v. Brown*, 462 F.3d 312, 318–19 (4th Cir. 2006))); *id.* ("[P]roblems such as the inadequacy of the record . . . or ambiguity in the record . . . will make a case unfit for adjudication on the merits." (quoting *Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 662 (9th Cir. 2002))). This does not, however, warrant dismissal because eventually a developed record will be before the Court. *See Jones*, 891 F. Supp. 2d at 889.

### 3. The Political Law Doctrine

State Prosecutors argue that "Plaintiff corporation, in alleging the attorneys which it employs (or may in the future employ) are treated differently than a 'privileged class,' presents this court with a political question." (ECF No. 11 at 11.) The Court disagrees.

While there are instances where "the judicial department has no business entertaining the claim of unlawfulness—because the question is entrusted to one of the

34

political branches or involves no judicially enforceable rights," *Vieth v. Jubelirer*, 541 U.S. 267, 277 (2004) (plurality opinion)—"[i]t is emphatically the province and duty of the judicial department to say what the law is," *Marbury v. Madison*, 1 Cranch 137, 177 (1803). In other words, "[a] claim presents a political question when the responsibility for resolving it belongs to the legislative or executive branches rather than to the judiciary." *In re KBR, Inc., Burn Pit Litig.*, 744 F.3d 326, 334 (4th Cir. 2014); *see Baker v. Carr*, 369 U.S. 186, 210 (1962) ("The nonjusticiability of a political question is primarily a function of the separation of powers."). In *Baker*, the Supreme Court articulated six factors that courts should consider in determining whether a case presents a non-justiciable political question:

> [1] a textually demonstrable constitutional commitment of the issue to a coordinate political department; or [2] a lack of judicially discoverable and manageable standards for resolving it; or [3] the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or [4] the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or [5] an unusual need for unquestioning adherence to a political decision already made; or [6] the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

369 U.S. at 217. Among the matters that have been held non-justiciable under the political question doctrine are claims involving political gerrymandering,[9] most military decisions,[10] foreign affairs,[11] and impeachment and removal.[12]

---

[9] *See, e.g.*, *Vieth*, 541 U.S. at 281 (plurality opinion) ("[N]o judicially discernible and manageable standards for adjudicating political gerrymandering claims have emerged. Lacking them, we must conclude that political gerrymandering claims are nonjusticiable . . . .").

None of the six factors identified in *Baker* warrant dismissing CAI's claims based on the political law doctrine. CAI alleges that it has a fundamental right embodied in the Constitution to provide its members with legal services. Although State Prosecutors are correct that the State has discretion in "[d]efining the class of persons subject to a regulatory requirement," *Beach Commc'ns*, 508 U.S. at 315, the State cannot "infringe[] fundamental constitutional rights" in doing so, *id.* at 313. *See also Helton v. Hunt*, 330 F.3d 242, 246 (4th Cir. 2003) ("Given the inherent difficulties in drawing lines and creating classifications, the Supreme Court has accorded legislative enactments a strong presumption of validity so long as they do not discriminate against any protected class or burden any fundamental right."). The fact that North Carolina prefers to restrict the practice of law by corporations does not deprive this Court of the ability to determine whether the laws reflecting the State's policy preference violate any fundamental rights. Such a determination "require[s] no more than an interpretation of the Constitution."

---

[10] *See, e.g.*, *KBR*, 744 F.3d at 334 ("[T]he Constitution delegates authority over military affairs to Congress and to the President as Commander in Chief. It contemplates no comparable role for the judiciary . . . . [J]udicial review of military decisions would stray from the traditional subjects of judicial competence." (second alteration in original) (quoting *Lebron v. Rumsfeld*, 670 F.3d 540, 548 (4th Cir. 2012))).

[11] *See, e.g.*, *El-Shifa Pharm. Indus. Co. v. United States*, 607 F.3d 836, 841 (D.C. Cir. 2010) ("Disputes involving foreign relations . . . are 'quintessential sources of political questions.'" (quoting *Bancoult v. McNamara*, 445 F.3d 427, 433 (D.C. Cir. 2006))); *id.* (explaining that courts should rarely intervene in foreign policy and national security matters "[b]ecause these cases raise issues that 'frequently turn on standards that defy judicial application' or 'involve the exercise of a discretion demonstrably committed to the executive or legislature'" (quoting *Baker*, 369 U.S. at 211)).

[12] *See, e.g.*, *Nixon v. United States*, 506 U.S. 224, 229, 230–31, 238 (1993) (concluding that the case is non-justiciable because there is a clear textual commitment in Article I that gives the Senate "the sole Power to try all Impeachments").

*Powell v. McCormack*, 395 U.S. 486, 548 (1969). It is this Court's responsibility to interpret the Constitution. *See id.* at 548–49. Accordingly, CAI's claims do not present a non-justiciable political question.

### C. Failure to State a Claim

The Court must next determine whether CAI's claims survive State Prosecutors' motion to dismiss for failure to state a claim. CAI brings its claims under 42 U.S.C. § 1983. A party asserting claims under Section 1983 "must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

### 1. CAI's First Amendment Claims

State Prosecutors argue that "[t]here is no fundamental right to render legal assistance or practice law" under the First Amendment, relying in part on *Shaw v. Murphy*, 532 U.S. 223 (2001). (ECF No. 11 at 5–6.) They assert that rational basis review is the correct standard of review that this Court should apply to the UPL Statutes. (*Id.* at 7.) Noting that the State has a legitimate interest in regulating the legal profession, State Prosecutors conclude that the UPL Statutes pass rational basis review. (*Id.*)

State Prosecutors' argument that there is no fundamental right to practice law does not answer the question of whether CAI's proposal to provide its members with "legal advice" touches on rights protected under the First Amendment. Nor does the Supreme Court's decision in *Shaw* support State Prosecutors' argument. *Shaw* dealt with whether

the Supreme Court's deferential standard for reviewing a prisoner's constitutional claim "permits an increase in constitutional protection whenever a prisoner's communication includes legal advice."  532 U.S. at 230.  The Supreme Court held that "it does not."  *Id.* The Supreme Court's decision in *Shaw* has no application to this case.  Moreover, whether or not the State can provide a sufficient interest that justifies restricting CAI from providing legal advice to its members is not an issue that the Court must resolve at this time.  Rather, the threshold issues currently before the Court are whether the UPL Statutes, as applied to CAI, infringe any First Amendment rights, particularly as they relate to the right of association and freedom of speech as alleged by CAI.

      a.  First Amendment Right of Association

Related to its right of association claim under the First Amendment, CAI has alleged that it is an association comprised of members that have pooled their resources for the purpose of receiving low-cost human resources information services and advice from one another.  (ECF No. 1 ¶¶ 17, 42.)  By "prevent[ing] CAI['s] members from associating to secure legal advice and services," CAI alleges that the UPL Statutes prohibit CAI's members from fully receiving the advice and services they need.  (*Id.* ¶ 43.)  Relying on *Button* and its progeny, CAI contends that the First Amendment right of association gives it the right to provide legal services to its members.  (*See id.* ¶¶ 54–60; ECF No. 22 at 11–12.)  While it is true that the Supreme Court held that "[t]he common thread running through [its] decisions in [*Button*, *Trainmen*, and *Mine Workers*] is that collective activity undertaken to obtain meaningful access to the courts is a fundamental right within the protection of the First Amendment," *United Transp. Union*, 401 U.S. at

585, as this Court stated earlier, CAI, on the record currently before the Court, has failed to show a clear likelihood that it, its members, and the desired activities fall within the First Amendment protections afforded in those cases. However, when the Court evaluates a Rule 12(b)(6) motion, it applies a "sufficiency of the pleadings" standard, which requires a lesser showing than the "clear likelihood of success" standard applicable to motions for preliminary injunction. CAI's complaint can survive a Rule 12(b)(6) motion even if "recovery is very remote and unlikely." *See Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). Thus, the Court determines that CAI has alleged sufficient facts to support a cognizable claim related to its right of association claim under the First Amendment.

### b.  First Amendment Right of Free Speech

Similarly, CAI has provided sufficient facts to state a claim under the First Amendment's free speech clause. CAI argues that "legal advice, standing alone, is pure speech, and the UPL Statutes impermissibly infringe on CAI's First Amendment rights by censoring CAI's speech based on its (legal) content" and based on its identity as a corporation. (ECF No. 22 at 12; ECF No. 1 ¶¶ 64–72.) Thus, the Court must determine whether "legal advice" is protected speech under the First Amendment.

A recent Supreme Court decision suggests that providing legal advice is protected to some extent as speech under the First Amendment. In *Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010), the plaintiffs challenged a federal statute that prohibited them from providing "material support," which included legal training and advice, to certain terrorist organizations. *Id.* at 10–11. The plaintiffs argued that the statute violated,

among other things, their free speech rights. *Id.* The government argued that the statute targeted conduct and not speech. *Id.* at 26. The Supreme Court rejected the government's argument, explaining that "[t]he Government is wrong that the only thing actually at issue in this litigation is conduct." *Id.* at 27. The Court stated:

> Plaintiffs want to speak to the [organizations], and whether they may do so under § 2339B depends on what they say. If plaintiffs' speech to those groups imparts a 'specific skill' or communicates advice derived from 'specialized knowledge'—for example, training on the use of international law or advice on petitioning the United Nations—then it is barred. On the other hand, plaintiffs' speech is not barred if it imparts only general or unspecialized knowledge.

*Id.* (citation omitted).

In this case, CAI has alleged that it seeks to provide its members with legal advice. To the extent that such advice is communicated, CAI has stated a cognizable claim that "legal advice" implicates some speech under the First Amendment.[13] Whether the state can regulate it to the exclusion of CAI is an issue that goes to the merits of CAI's claims. At this stage of the proceedings, CAI has alleged sufficient facts to support a cognizable

---

[13] Other courts, including the Fourth Circuit, have reached similar conclusions. *See Wollschlaeger v. Governor of Fla.*, --- F.3d ---, 2015 WL 4530452, at *16 (11th Cir. 2015); *Stuart v. Camnitz*, 774 F.3d 238, 245 (4th Cir. 2014); *King v. Governor of N.J.*, 767 F.3d 216, 224–25 (3d Cir. 2014).

claim under the First Amendment's free speech clause. State Prosecutors' motion to dismiss related to this claim is denied.[14]

## 2. State Prosecutors' Sovereign Immunity Argument[15]

This Court rejects State Prosecutors' argument that "[n]o one has a right to enjoin a District Attorney or the Attorney General from the performance of their constitutional and statutory duties." (ECF No. 11 at 8.) To the extent the Court concludes that the performance of their duties infringes on fundamental rights, State Prosecutors must yield to the commands of the United States Constitution, irrespective of the duties prescribed to them by statute or state constitution. Moreover, this is not a case where CAI seeks money damages from the State or State Prosecutors in their roles as state officials. Under that scenario, State Prosecutors would enjoy sovereign immunity under the Eleventh Amendment. *Edelman v. Jordan*, 415 U.S. 651, 663 (1974); *see Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 549 (4th Cir. 2014) ("State officials sued in their official capacities for retrospective money damages have the same sovereign immunity accorded to the State."). Rather, CAI seeks prospective injunctive relief against State Prosecutors in their official

---

[14] The Court need not address in detail State Prosecutors' argument for dismissing CAI's claim related to advertisement of its legal services, as that claim is tied to the larger question of whether CAI has a right to provide legal services. Further, the Supreme Court has stated that "advertising by attorneys may not be subjected to blanket suppression." *Bates v. State Bar of Ariz.*, 433 U.S. 350, 383 (1977). Because CAI has stated a claim for an alleged violation of its First Amendment rights of free speech and association, the Court finds that CAI has also stated a claim for relief with regard to its advertisement claim under the First Amendment.

[15] The Fourth Circuit has held that immunity under the Eleventh Amendment does not go to a court's subject matter jurisdiction; rather, immunity operates like an affirmative defense with the defendant bearing the burden of establishing it. *Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 543 (4th Cir. 2014).

capacities only. Immunity therefore does not apply. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102–03 (1984); *McBurney v. Cuccinelli*, 616 F.3d 393, 399 (4th Cir. 2010) (explaining that immunity does not bar a federal court from issuing "prospective, injunctive relief against a state officer to prevent ongoing violations of federal law, on the rationale that such a suit is not a suit against the state for purposes of the Eleventh Amendment"). Over 100 years ago, the Supreme Court stated:

> If the act which the state Attorney General seeks to enforce be a violation of the Federal Constitution, the officer in proceeding under such enactment comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct. The State has no power to impart to him any immunity from responsibility to the supreme authority of the United States.

*Ex parte Young*, 209 U.S. 123, 159–60 (1908). All that is required of CAI is that it allege ongoing violations of its constitutional rights, which CAI has done, and that State Prosecutors have some connection with the enforcement of the UPL Statutes, which has also been satisfied in this case. *See S.C. Wildlife Fed'n v. Limehouse*, 549 F.3d 324, 332 (4th Cir. 2008) ("Where a state law is challenged as unconstitutional, a defendant must have 'some connection with the enforcement of the act' in order to properly be a party to the suit." (quoting *Lytle v. Griffith*, 240 F.3d 404, 409 (4th Cir. 2001))). Thus, the Court rejects State Prosecutors' argument on this claim.

### D. Failure to Join a Necessary Party

Finally, State Prosecutors argue that CAI's Complaint should be dismissed under Rule 12(b)(7) for failure to join a necessary party under Rule 19, specifically the State Bar and CAI's present or future attorneys.

With the State Bar having intervened in this action, State Prosecutors' argument related to them appears moot. However, even if they were not in this action, the Court would not dismiss the Complaint for failure to join a necessary party, as dismissal for failure to join a necessary party is a drastic remedy. *See Teamsters*, 173 F.3d at 918. In addition, CAI challenges the constitutionality of the UPL Statutes, which State Prosecutors, not the State Bar, are tasked with enforcing through bringing criminal charges against a party, such as CAI, that has engaged in practices that constitute the unauthorized practice of law in North Carolina.

Further, CAI's present and future attorneys are not necessary parties to this action. CAI has alleged that the UPL Statutes restrict its rights by subjecting it to criminal penalties if it engages in activities that constitute the practice of law in North Carolina. As is true for any corporation, CAI can only act through its people, and Sections 84-7 and 84-8 of the North Carolina General Statutes identify corporations and natural persons as being subject to criminal charges for the unauthorized practice of law in North Carolina. As such, Sections 84-7 and 84-8 make clear that CAI, and not its attorneys, would face criminal penalties if it provides legal advice and services to its members. The Court must therefore deny State Prosecutors' motion to dismiss for failure to join a necessary party.

43

### E. Conclusion

For the reasons outlined above, the Court concludes that State Prosecutors' Motion to Dismiss for lack of subject matter jurisdiction, failure to state a claim, and failure to join a necessary party must be denied. In addition, State Prosecutors' Motion to Dispense with Mediation, in light of there being no opposition, is allowed.

## ORDER

IT IS THEREFORE ORDERED that CAI's Motion for Preliminary Injunction (ECF No. 19) is DENIED and State Prosecutors' Motion to Dismiss (ECF No. 10) is DENIED. IT IS FURTHER ORDERED that State Prosecutors' Motion to Dispense with Mediation (ECF No. 12) is GRANTED.

This, the 4th day of September, 2015.

_____/s/ Loretta C. Biggs_____
United States District Judge
