# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| CAPITAL ASSOCIATED INDUSTRIES, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 1:15cv83 |
| JOSH STEIN, in his official capacity as Attorney General of the State of North Carolina, et al., | ) ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Loretta C. Biggs, District Judge.

Plaintiff, Capital Associated Industries ("CAI"), initiated this action for declaratory and injunctive relief, alleging that the enforcement of Sections 84-4 and 85-5 of the North Carolina General Statutes ("UPL Statutes"), which govern the unauthorized practice of law, violate the United States Constitution and the North Carolina Constitution, as applied to CAI. (ECF No. 1 ¶¶ 1, 100.) Before the Court are three motions for summary judgment brought pursuant to Rule 56 of the Federal Rules of Civil Procedure by (1) Defendants Josh Stein,[1] Nancy Lorrin Freeman, and J. Douglas Henderson (collectively "State Prosecutors"), (ECF No. 100); (2) CAI, (ECF No. 103); and (3) Intervenor-Defendant, the North Carolina State Bar (the "State

---

[1] Josh Stein became the Attorney General of the State of North Carolina on January 1, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Josh Stein should, therefore, be substituted for Roy Cooper as a defendant in this suit. Fed. R. Civ. P. 25(d).

Bar"), (ECF No. 112).  For the reasons stated below, the Court (1) denies State Prosecutors'

motion, (2) denies CAI's motion, (3) and grants the State Bar's motion.

## I.      BACKGROUND

In its Complaint, CAI describes itself as a tax-exempt, "non-profit employers'

association" comprised of approximately 1,080 employers throughout North Carolina that

"associate[ ] . . . to promote industrial development and progress." (ECF No. 1 ¶¶ 6, 17.)  CAI

members pay annual membership dues to CAI to receive "efficient, low-cost human

resources-related information, advice, data, education, legislative advocacy, and other benefits

and services pertaining to each member's human resources, compliance, and day-to-day

management needs." (*Id.* ¶ 17.)  In addition to its current offerings, CAI wishes to provide

"employment-related legal advice and services to its members through licensed North Carolina

attorneys" that it employs, as part of the dues its members currently pay.   (ECF No. 105-1

¶¶ 34, 44.)  For a separate fee of $195 per hour, CAI also wishes to offer its members other

legal services that would include drafting employment, separation, and non-compete

agreements, reviewing employment policies and handbooks, and representation "in charges

before the Equal Employment Opportunity Commission." (*Id.* ¶ 44.)  The legal services that

CAI wishes to offer would not include providing legal assistance with matters related to

litigation or "extremely specialized areas of workplace law" including, for example, "[t]ax

matters that relate to workplace and employee needs." (ECF No. 106-1 at 64–67.)

In April of 2013, CAI requested from the State Bar an opinion as to whether CAI's

proposed plan to provide legal advice and services to its members would constitute the

unauthorized practice of law.  (ECF Nos. 42 ¶¶ 7–9; 42-1.)  On May 28, 2013, the State Bar

issued a proposed ethics decision, which notified CAI that its plan would amount to the unauthorized practice of law because of CAI's status as a corporation not authorized to practice law.  (*See* ECF No. 42-2.)

On January 23, 2015, CAI filed this lawsuit, seeking declaratory relief and requesting that State Prosecutors be enjoined from enforcing the UPL Statutes against CAI.  (ECF No. 1.)  CAI alleged that the enforcement of the UPL Statutes, as applied to CAI, would violate (1) its right to substantive due process under the Fourteenth Amendment to the Constitution, (*id.* ¶¶ 45–53); (2) its right of association under the First Amendment, (*id.* ¶¶ 54–63); (3) its right to free speech under the First Amendment on the grounds that the UPL Statutes operate as content-based restrictions and prevent CAI from speaking because it is a corporation, (*id.* ¶¶ 64–72); (4) its right to due process under the Fourteenth Amendment on the ground that the UPL Statutes are vague, (*id.* ¶¶ 73–82); (5) its right to free speech on the ground that the UPL Statutes prohibit CAI from advertising its proposed legal services, (*id.* ¶¶ 83–91); and (6) the Monopoly Clause of the North Carolina Constitution, (*id.* ¶¶ 92–99).  On February 16, 2015, CAI sought a preliminary injunction, requesting that the Court enjoin State Prosecutors from taking any action that would interfere with CAI offering or delivering legal advice and services to its members through CAI attorneys licensed to practice law.  (ECF No. 19 at 1.) State Prosecutors moved to dismiss CAI's claims.  (ECF No. 10.)

The Court heard oral arguments on the motions on May 29, 2015.  On September 4, 2015, this Court entered a Memorandum Opinion and Order ("Preliminary Injunction Order"), denying CAI's motion for a preliminary injunction, and denying State Prosecutors' motion to dismiss.  *Capital Associated Indus., Inc. v. Cooper*, 129 F. Supp. 3d 281, 308 (M.D.N.C.

2015).  State Prosecutors later moved for judgment on the pleadings, and the Court entered an Order that denied that motion.  *Capital Associated Indus., Inc. v. Cooper*, No. 1:15CV83, 2016 WL 6775484, at *2 (M.D.N.C. June 23, 2016).  Each Party has now moved for summary judgment.  (ECF Nos. 100, 103, 112.)

## II.   LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is "genuine" if the evidence would permit a reasonable jury to find for the nonmoving party, and "[a] fact is material if it might affect the outcome" of the litigation.  *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568 (4th Cir. 2015) (quotations omitted).  The role of the court is not "to weigh the evidence and determine the truth of the matter" but rather "to determine whether there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Id.* at 249–50 (citations omitted).  When reviewing a motion for summary judgment, the court must "resolve all factual disputes and any competing, rational inferences in the light most favorable" to the nonmoving party.  *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003).  When, as here, a court has before it cross-motions for summary judgment, "the court must review each motion separately on its own merits" to determine whether each party is entitled to judgment as a matter of law.  *Id.*

## III.   DISCUSSION

State Prosecutors have moved for summary judgment on jurisdictional grounds and on CAI's right of association claim only.  (ECF No. 100.)  CAI and the State Bar have each moved

for summary judgment on each of the six claims brought by CAI. (ECF Nos. 103, 112.) As State Prosecutors raise the threshold issue of whether the Court can consider CAI's claims, the Court will first consider their motion.

### A. State Prosecutors' Motion for Summary Judgment

#### 1. *Standing and Ripeness*

State Prosecutors argue that CAI cannot satisfy the requirements of standing doctrine or ripeness doctrine because CAI did not face a credible threat of prosecution before it brought suit. (ECF No. 101 at 6–20.) CAI contends that it does have standing to sue on the ground that such a threat exists. (ECF No. 117 at 4–11.) The Court observes that "the Article III standing and ripeness issues in this case 'boil down to the same question.'"[2] *See Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 n.5 (2014) (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128 n. 8 (2007)). Accordingly, the Court will consider State Prosecutors' arguments concerning standing and ripeness simultaneously, characterizing the discussion as one involving "standing."

Article III limits the jurisdiction of federal courts to cases and controversies. U.S. Const. art. III, § 2. Standing doctrine is "[o]ne element of the case-or-controversy

---

[2] As the Supreme Court has explained, "[t]he justiciability problem that arises, when the party seeking declaratory relief is himself preventing the complained-of-injury from occurring, can be described in terms of standing . . . or in terms of ripeness." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128 n.8 (2007). As applied to this factual scenario, the imminence requirement of standing doctrine and the hardship prong of ripeness doctrine require courts to conduct similar inquiries. For example, standing doctrine requires a cognizable injury that will occur in the future to be imminent. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Similarly, ripeness doctrine requires courts to ask whether a plaintiff will suffer some hardship if the court declines to consider an issue at a certain time. *Doe v. Va. Dep't of State Police*, 713 F.3d 745, 758 (4th Cir. 2013). Thus, when evaluating the cognizability of a future injury, both doctrines ask courts to determine whether that prospective harm will affect the plaintiff soon enough to justify the invocation of federal jurisdiction.

requirement," and a plaintiff that invokes federal jurisdiction must accordingly establish standing to sue. *Clapper v. Amnesty Int'l*, 133 S. Ct. 1138, 1146 (2013). A plaintiff has standing upon demonstrating an injury that is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Id.* at 1147. A plaintiff has standing to bring a "pre-enforcement challenge" to a statute when the plaintiff "faces a credible threat of prosecution" under that law. *N.C. Right to Life, Inc. v. Bartlett*, 168 F.3d 705, 710 (4th Cir. 1999). Further, when "the State has not disclaimed any intention of enforcing" the challenged statute, a plaintiff "need not actually violate" that statute, "or be proactively threatened with prosecution prior to violation, in order to have standing to challenge its constitutionality." *Does 1–5 v. Cooper*, 40 F. Supp. 3d 657, 671–72 (M.D.N.C. 2014); *see MedImmune, Inc.*, 549 U.S. at 129 ("The plaintiff's own action (or inaction) in failing to violate the law eliminates the imminent threat of prosecution, but nonetheless does not eliminate Article III jurisdiction.").

The Court concludes that CAI has standing to bring its claims because it faces a credible threat of prosecution under the UPL Statutes. The Court's justification for this conclusion remains unchanged from the Court's earlier ruling on this issue:

> State Prosecutors have not stated that they would refrain from prosecuting CAI for violating the UPL Statutes. Nor have State Prosecutors stated that they disagree with the State Bar's proposed ethics opinion issued to CAI. To the contrary, State Prosecutors and the State Bar vigorously contend that CAI lacks the right to provide its members with legal advice and services. CAI need not subject itself to criminal prosecution to establish standing to challenge the UPL Statutes. . . . With the injury-in-fact requirement satisfied, CAI clears the other two hurdles for standing: causation and redressability.

*Capital Associated Indus., Inc.*, 129 F. Supp. 3d at 301–02. State Prosecutors advance several related, yet equally unavailing, arguments to counter the conclusion that CAI faces a credible threat of prosecution. (ECF No. 101 at 6–15.)

State Prosecutors contend that CAI lacks standing because (1) the record contains no evidence of a pending prosecution against CAI, (*id.* at 7; *see id.* at 12–13); (2) CAI's plan is insufficiently specific, (*id.* at 7–8; 15–16); (3) the record contains no evidence of UPL prosecutions of "licensed attorneys, business association or corporation attorneys by the Attorney General or these two District Attorneys," (*id.* at 7; *see id.* at 11); (4) North Carolina law does not allow prosecutors to agree to refrain from enforcing the law, (*id.* at 13–15; 17–20); and (5) CAI has provided no evidence to support its "theory that the State Bar, or any other person, association or entity can make a referral to the Attorney General or a District Attorney, and have that referral automatically result in a prosecution for" the unauthorized practice of law, (ECF No. 101 at 16–17).

The Court does not find State Prosecutors' arguments persuasive. First, CAI is not required to submit evidence that it faces a pending prosecution in order for the threat of prosecution to be credible. CAI could only satisfy such a requirement by engaging in the prohibited conduct, which the law does not require it to do. *See MedImmune, Inc.*, 549 U.S. at 128–29. Second, CAI's plan is sufficiently specific to allow the State Bar to conclude that the plan would constitute the unauthorized practice of law. (*See* ECF No. 42-2.) This conclusion by the State Bar is sufficient to subject CAI to criminal liability under North Carolina law and

thus establish a threat of prosecution. *See* N.C. Gen. Stat. § 84-7.[3] Third, the fact that North Carolina has not prosecuted a business association for the unauthorized practice of law is immaterial to the standing inquiry.[4] Fourth, the question of whether North Carolina law allows district attorneys to disavow their enforcement of state law is also irrelevant. Since State Prosecutors have not refused to enforce the UPL Statutes, CAI faces a credible threat of prosecution. Finally, contrary to State Prosecutors' contention, the Court concludes that North Carolina law requires the State's district attorneys to indict individuals or entities who allegedly violate the UPL Statutes once a district attorney receives notice of the alleged violation. *See Disciplinary Hearing Comm'n v. Frazier*, 556 S.E.2d 262, 264 (N.C. 2001) ("The duty imposed on district attorneys by N.C.G.S. § 84-7 is not to be ignored."). The Court concludes that CAI does have standing as a matter of law and thus State Prosecutors have failed to carry their burden. Accordingly, State Prosecutors are not entitled to summary judgment on jurisdictional grounds.

### 2. *Right of Association*

The Court will next address State Prosecutors' right of association argument. The Court will address this argument separately from its discussion of the cross-motions brought

---

[3] N.C. Gen. Stat. § 84-7 states that: "[U]pon the application of any member of the Bar, or of any bar association, of the State of North Carolina . . . it *shall be the duty* of the district attorneys of this State to indict any person, corporation, or association of persons upon the receipt of information of the violation of the [UPL Statutes]." N.C. Gen. Stat. § 84-7 (emphasis added).

[4] State Prosecutors rely on *Poe v. Ullman*, 367 U.S. 497 (1961), to support this argument. (ECF No. 101 at 8.) In *Poe*, the Supreme Court concluded that a state's decision not to enforce a statute over an eighty-year period renders the threat of prosecution too speculative to satisfy federal jurisdictional requirements. *Poe*, 367 U.S. at 508. However, *Poe* does not support the State Prosecutors' argument because State Prosecutors acknowledge that the State has prosecuted individuals under the UPL Statutes. (ECF No. 101 at 11.)

by CAI and the State Bar because State Prosecutors' argument rests on different grounds. State Prosecutors contend that they are entitled to summary judgment on CAI's right of association claim solely because, according to them, CAI has not produced any evidence "to support CAI's efforts to categorize its members as 'marginalized individuals who were actually being denied channels to vindicate rights.'" (ECF No. 101 at 15 (quoting *Capital Associated Indus., Inc.*, 129 F. Supp. 3d at 293).) CAI does not respond directly to this contention. CAI merely states that: "Although the State raises several arguments, the theme of its challenges is the familiar refrain that CAI lacks standing in this case." (ECF No. 117 at 4.)

It appears that State Prosecutors may have misconstrued the Court's Preliminary Injunction Order, in which the Court concluded that "[p]aying more than desired for the assistance of outside counsel does not place CAI and its employer-members in the same category as union workers, minorities, or other marginalized individuals who were *actually* being denied channels to vindicate rights protected by the United States Constitution or federal law." *Capital Associated Indus., Inc.*, 129 F. Supp. 3d at 293. In raising this argument, State Prosecutors appear to construe that conclusion as a rule that CAI must satisfy in order to prevail on its right of association claim. However, in the Preliminary Injunction Order, the Court also stated that it "d[id] not foreclose the possibility that the activities CAI and its members wish to undertake may be entitled to First Amendment protection." *Id.* at 292. The right of association protected under the First Amendment extends beyond marginalized individuals who are denied access to the courts. *See Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984) (concluding that the right of association protects efforts to join "with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends").

Accordingly, the Court concludes that State Prosecutors have not met their burden of showing that they are entitled to judgment as a matter of law on CAI's right of association claim. Having concluded that State Prosecutors have failed to carry their burden on the two issues raised in their motion, the Court will deny State Prosecutors' motion for summary judgment.

## B. Cross-Motions for Summary Judgment

The Court next turns to the cross-motions for summary judgment brought by CAI and the State Bar.[5]  Each party has moved for summary judgment on each of the six claims brought by CAI.

At the outset, the Court recognizes that CAI has brought an as-applied challenge with respect to each of its claims.  (ECF No. 1 ¶ 4; ECF No. 125 at 2 n.1.)  The State Bar argues, however, that even though CAI cannot succeed on its constitutional claims (whether they are construed as facial or as applied), CAI has presented insufficient facts for the Court to consider CAI's claims on an as-applied basis.  (*See* ECF No. 123 at 6–7.)  The Court agrees with the State Bar's observation that CAI appears to prefer a limited record.   Nonetheless, while this Court previously concluded that the record was too "skeletal" for CAI to meet its burden of demonstrating a clear likelihood of success on the merits, as was required to prevail on its motion for a preliminary injunction, *see Capital Associated Indus., Inc.*, 129 F. Supp. 3d at 296,

---

[5] State Prosecutors respond to CAI's motion by contending that CAI has abandoned its claims on the grounds that CAI's Motion and accompanying brief "do not mention the State prosecutors in argument . . . and offer no evidence in support" of CAI's claims against State Prosecutors.  (ECF No. 118 at 5.)  State Prosecutors further contend that CAI lacks standing and that its claims are not ripe. (*Id.* at 6.)  The Court concludes that CAI has not abandoned its claims as it has briefed each issue.  *See Newton v. Astrue*, 559 F. Supp. 2d 662, 670 (E.D.N.C. 2008) (concluding that a litigant abandoned her claim when she "ha[d] not briefed [an] issue," and had not "presented it to the Court with any supporting discussion, argument, or authority").  The Court also reiterates its conclusion that CAI has standing to bring each claim and that each claim is ripe.

the Court concludes that the record is adequate to consider CAI's as-applied challenge at this stage of the proceedings. Moreover, the Supreme Court has expressed a strong preference for avoiding facial challenges. *See Richmond Med. Ctr. for Women v. Herring*, 570 F.3d 165, 173 (2009) (citing *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450–51 (2008)). The Court will consider CAI's as-applied challenge to each of its claims.

### 1. *Substantive Due Process*

CAI argues that North Carolina's UPL Statutes, as applied to CAI, violate CAI's right to substantive due process because the statutes are not rationally related to any legitimate governmental interest. (ECF No. 104 at 20–22.) The State Bar responds that the UPL Statutes are rationally related to North Carolina's interest in avoiding potential "conflicts of interest and loyalty," as well as its interest in avoiding the "impairment of attorney independence." (ECF No. 113 at 7–11.)

Under the Due Process Clause of the Fourteenth Amendment, "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Due Process Clause has "procedural and substantive components." *Plyler v. Moore,* 100 F.3d 365, 374 (4th Cir. 1996). When a plaintiff alleges that a state legislative act violates a right entitled to substantive due process protection, a court must engage in a two-step inquiry. *Hawkins v. Freeman*, 195 F.3d 732, 739 (4th Cir. 1999). A court must first determine whether the right that was allegedly violated is "one of 'those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition' and 'implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed.'" *Id.* (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997)). The

second step depends on the outcome of the first. *Id.* If the court determines that the state action implicates one of those fundamental rights or liberties, the court must apply strict scrutiny to the challenged action. *Id.* If the state action implicates a right that is neither fundamental nor enumerated, the challenged state action is subject to rational basis review, *see id.*, which "is quite deferential," *Colon Health Ctrs. of Am., LLC v. Hazel*, 733 F.3d 535, 548 (4th Cir. 2013). The asserted liberty interest in this case, namely, the right of a trade association to provide legal services to its members, is not an enumerated right, nor has it been identified as a fundamental right. CAI does not ask this Court to hold that this right is a fundamental right. The Court will therefore apply rational basis review.

A challenged state action will survive rational basis review if it is "rationally related to legitimate government interests." *Glucksberg*, 521 U.S. at 728. This deferential standard does not require "mathematical precision in the fit between justification and means." *Star Sci., Inc. v. Beales*, 278 F.3d 339, 348 (4th Cir. 2002) (quoting *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602, 639 (1993)). Rather, "[i]t is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it." *Id.* (quoting *Williamson v. Lee Optical of Okla., Inc.*, 348 U.S. 483, 488 (1955)). This Court's task, therefore, is limited to evaluating whether North Carolina's chosen means of furthering its legitimate interests is "at least reasonably related to their promotion and protection." *Glucksberg*, 521 U.S. at 735.

The State Bar has identified two legitimate state interests that the UPL Statutes further. Those interests include avoiding "conflicts of interest and loyalty, and impairment of attorney

independence."[6] (ECF No. 113 at 8.) The Court concludes that the UPL Statutes are reasonably related to the promotion of these legitimate interests. North Carolina could rationally decide that non-lawyers would be more likely than lawyers to encourage the attorneys whom they supervise to violate the ethical canons that govern the legal profession. *See Jacoby & Meyers, LLP v. Presiding Justices*, 852 F.3d 178, 181, 191–92 (2d Cir. 2017) (concluding that New York law, which "prohibits non-attorneys from investing in law firms . . . easily pass[es] muster under rational basis review" because "the regulations preclude the creation of incentives for attorneys to violate ethical norms, such as those requiring attorneys to put their clients' interests foremost"). Accordingly, North Carolina's prohibition on the unauthorized practice of law, as applied to CAI, survives rational basis review.[7]

The Court is not persuaded by CAI's four arguments that the UPL Statutes cannot survive rational basis review, based on its contention that "[t]he facts underlying the general prohibition against trade associations offering legal services are not conceivably true." (ECF No. 104 at 21.) First, CAI argues that "there is no harm to [its] members or the public if the trade association's attorneys comply with their ethical obligations; and North Carolina presumes that attorneys will comply with their ethical obligations." (*Id.*; *see id.* at 14–15.) However, the State can reasonably conclude that an attorney who is supervised by a non-attorney would be more likely to violate those ethical obligations, irrespective of any

---

[6] Relatedly, the North Carolina Supreme Court has observed that North Carolina's ban on the corporate practice of law by entities not managed by attorneys furthers the State's legitimate interest in providing for "the better security of the people against incompetency and dishonesty in an area of activity affecting general welfare." *State v. Pledger*, 127 S.E.2d 337, 339 (N.C. 1962).

[7] The Court rejects CAI's contentions that the UPL Statutes do not further any public interest concern, and that no such concern applies to CAI. (*See* ECF No. 104 at 12–14.)

presumption that the State might have about the conduct of supervised attorneys. Second, CAI contends that "there is no evidence supporting the existence of the public-interest concerns [underlying the UPL Statutes] at trade associations." (*Id.* at 21; *see id.* at 14.) However, the State is under no obligation to submit evidence supporting the reasonableness of its legislative choice. *See Bostic v. Schaefer*, 760 F.3d 352, 393 (4th Cir. 2014) (noting that on rational-basis review, "[a]s long as [the legislature] has a reasonable basis for adopting the classification, which can include rational speculation unsupported by evidence or empirical data, the statute will pass constitutional muster" (second alteration in original) (quotation marks omitted)).

Nor is the Court persuaded by CAI's third argument that "the record shows that North Carolina has determined that the public-interest concerns are tolerated for attorneys in other contexts." (ECF No. 104 at 21; *see id.* at 15–17.) The Court will not consider evidence that compares CAI to other entities that are allowed to provide legal services under North Carolina's UPL Statutes. Such an inquiry necessarily entails a higher level of scrutiny than rational basis review permits the Court to apply. *See Romer v. Evans*, 517 U.S. 620, 632 (1996) ("In the ordinary case, a law will be sustained if it can be said to advance a legitimate government interest, even if the law seems unwise or works to the disadvantage of a particular group."). Finally, the Court is not persuaded by CAI's fourth argument that "North Carolina has the ability to regulate trade associations' legal services through the Rules of Professional Conduct, a registration scheme, and injunctive relief." (ECF No. 104 at 21; *see id.* at 17–18.) The fact that North Carolina could have chosen an alternate means to further its legitimate

interests does not disturb the conclusion that its chosen means is reasonable.[8]  *See Schweiker v. Wilson*, 450 U.S. 221, 235 (1981) (concluding that under rational basis review, as long as the state's chosen means "rationally advances a reasonable and identifiable governmental objective, [the Court] must disregard the existence of other methods that" the Court "perhaps would have preferred").

In sum, the Court concludes that CAI has not met its burden of showing that it is entitled to judgment as a matter of law on its substantive due process claim.  The State Bar has met its burden and is accordingly entitled to judgment as a matter of law on this claim.

2. *Freedom of Speech*

CAI next argues that the UPL Statutes violate the freedom of speech guaranteed by the First Amendment, as applied to its proposed provision of legal services.  (ECF No. 104 at 27–32.)  Specifically, CAI argues that the UPL Statutes restrict CAI's speech on the basis of its content; that the UPL Statutes prohibit CAI from speaking on the basis of its corporate identity; and that this restriction on its speech cannot survive strict scrutiny.  (*Id.* at 28–32.)  The State Bar argues that the UPL Statutes operate as permissible regulation of a profession and not a restriction on speech that is entitled to First Amendment protection.  (ECF No. 113 at 28.)

---

[8] CAI also contends that it could "implement a governing structure that will confirm and protect its attorneys' adherence to the Rules of Professional Conduct, ensure that its attorneys have control over the legal services they provide, establish conflict-screening procedures, ensure that confidential communications and client information are preserved, and establish attorney oversight over any advertising for legal services."  (ECF No. 104 at 18.)  These purported safeguards do not alter the Court's conclusion for the same reason: this alternative method of furthering the state's legitimate interests does not render North Carolina's chosen means unreasonable.

The First Amendment, as applied to the states through the doctrine of incorporation, establishes that a state "shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I; *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940). This prohibition of state infringement on the freedom of speech does not, however, entitle every communicative act to constitutional protection. The Fourth Circuit has held that under the professional speech doctrine, "a state's regulation of a profession raises no First Amendment problem where it amounts to 'generally applicable licensing provisions' affecting those who practice the profession." *Moore-King v. Cty. of Chesterfield*, 708 F.3d 560, 569 (4th Cir. 2013) (quoting *Lowe v. SEC*, 472 U.S. 181, 232 (1985) (White, J., concurring)); *see Accountants Soc'y of Va. v. Bowman*, 860 F.2d 602, 604 (4th Cir. 1988) ("Professional regulation is not invalid, nor is it subject to first amendment strict scrutiny, merely because it restricts some kinds of speech.").

The Fourth Circuit has discussed the appropriate test to determine whether the professional speech doctrine applies in *Moore-King v. County of Chesterfield*, 708 F.3d 560 (4th Cir. 2013), and *Accountants Society of Virginia v. Bowman*, 860 F.2d 602 (4th Cir. 1988). These cases instruct that if a speaker "takes the affairs of a client personally in hand and purports to exercise judgment on behalf of the client in the light of the client's individual needs and circumstances," then the statute operates as professional regulation that is not subject to First Amendment scrutiny. *Moore-King*, 708 F.3d at 569 (quoting *Bowman*, 860 F.2d at 604). In contrast, if a speaker "does not purport to be exercising judgment on behalf of any particular individual," *Bowman*, 860 F.2d at 604 (quoting *Lowe*, 472 U.S. at 232 (White, J., concurring)), but instead "engages in public discussion and commentary," then the statute operates as a restriction on speech that is subject to First Amendment scrutiny, *Moore-King*, 708 F.3d at 569.

Accordingly, under this test, a statute either operates as professional regulation that is not subject to First Amendment scrutiny, or a restriction on speech that is subject to First Amendment scrutiny. *See Moore-King*, 708 F.3d at 569.

CAI seeks to provide legal services to individual members, which will require it to exercise judgment on behalf of particular members in the light of those members' individual needs and circumstances. *See Moore-King*, 708 F.3d at 569. CAI does not plan to engage in "public discussion and commentary," *id.*, through the provision of its legal services. Further, the UPL Statutes, as applied to CAI, "amount to 'generally applicable licensing provisions,'" *id.* (quoting *Lowe*, 472 U.S. at 232 (White J., concurring)). Any "[p]rofessional corporation" that seeks to provide legal services in North Carolina can render those services "subject to the applicable rules and regulations adopted by . . . the licensing board," which in this case, is the North Carolina State Bar. N.C. Gen. Stat. §§ 55B-2(4)–(6), 55B-12(a). Therefore, the professional speech doctrine applies in this case. Accordingly, as applied to CAI, the UPL Statutes operate as professional regulation that is not subject to First Amendment scrutiny on freedom of speech grounds.[9]

CAI argues that its proposed legal services are pure speech, as opposed to conduct (ECF No. 104 at 28–30), however this distinction is immaterial. CAI contends that its provision of legal services would constitute speech, and not conduct, because it will be required to communicate in order to provide its proposed services. (*Id.*) There is no question that CAI's provision of legal services would require it to communicate with its member-clients.

---

[9] The Court will not analyze the UPL Statutes as content-based restrictions, as CAI contends that the Court should. *See Moore-King*, 708 F.3d at 567–70 (analyzing a licensing scheme for fortune tellers under the professional speech doctrine and not as a content-based restriction).

Rather, the question in this case is whether the type of communication that the UPL Statutes restrict is entitled to First Amendment protection. For the reasons stated above, the Court concludes that CAI's proposed communicative acts fall under the professional speech doctrine and are therefore not entitled to First Amendment protection.

CAI also argues that the UPL Statutes violate freedom of speech because the statutes impermissibly prohibit CAI from speaking on the basis of its identity as a corporation. (ECF No. 104 at 30–31.) The Court rejects this assertion for two reasons. First, as stated above, the UPL Statutes operate as professional regulation that is not subject to First Amendment scrutiny under Fourth Circuit precedent. Therefore, no First Amendment bar to government regulation of speech on the basis of a speaker's corporate identity could apply in this case. *Cf. Citizens United v. FEC*, 558 U.S. 310, 364 (2010). Second, to the extent that any First Amendment bar to regulatory distinctions based on a speaker's corporate identity could apply to prohibit professional regulation as a general matter, that First Amendment bar would present no issue in this case. North Carolina does not bar CAI from providing legal services "solely because CAI is a corporation," (ECF No. 104 at 30), as CAI contends. The UPL Statutes do "not apply to corporations *authorized to practice law* under the provisions of Chapter 55B of the General Statutes of North Carolina." N.C. Gen. Stat. § 84-5(a) (emphasis added). North Carolina permits corporations to provide legal services, subject to the state's ordinary regulation of the legal profession. *Id.* §§ 55B-2(4)–(6), 55B-12(a). Thus, CAI's corporate identity poses no bar to its ability to engage in professional speech, which nonetheless remains unprotected by the First Amendment.

CAI has failed to carry its burden that it is entitled to judgment as a matter of law on its freedom of speech claim. Conversely, the State Bar has met its burden.

### 3. Right of Association

CAI next argues that its members have a constitutionally protected right to associate to provide group legal services, relying on a line of Supreme Court cases that it characterizes as *NAACP v. Button* and its progeny,[10] to support this argument. (ECF No. 104 at 22–23.) Further, CAI argues that North Carolina's infringement of that right cannot survive strict scrutiny. (*Id.* at 26–27.) The State Bar counters that *NAACP v. Button* and its progeny do not extend the right of association to protect CAI and its plan to provide legal services because CAI's goals are to increase revenue and reduce its members' expenses, which are not entitled to constitutional protection. (ECF No. 113 at 12–28.)

The Supreme Court has recognized the right to associate as a means of protecting the freedom to engage collectively in activities that are entitled to First Amendment protection. *Roberts*, 468 U.S. at 622 ("[W]e have long understood as implicit in the right to engage in activities protected by the First Amendment a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends."). In *NAACP v. Button* and its progeny,[11] the Supreme Court held that state actions that

---

[10] The following cases comprise the line of cases that CAI references as "*NAACP v. Button* and its progeny": *NAACP v. Button*, 371 U.S. 415 (1963), *Brotherhood of Railroad Trainmen v. Virginia ex rel. Virginia State Bar*, 377 U.S. 1 (1964), *United Mine Workers of America, District 12 v. Illinois State Bar Ass'n*, 389 U.S. 217 (1967), *United Transportation Union v. State Bar of Michigan*, 401 U.S. 576 (1971), and *In re Primus*, 436 U. S. 412 (1978).

[11] This Court in its Preliminary Injunction Order engaged in a comprehensive discussion of each of the cases that it refers to as "*NAACP v. Button* and its progeny." The Court references that discussion for context here. *See Capital Associated Indus., Inc.*, 129 F. Supp. 3d at 289–92.

regulate the practice of law violate the right of association when those laws burden the collective exercise of protected First Amendment activity. *E.g.*, *United Mine Workers of Am., Dist. 12 v. Ill. State Bar Ass'n*, 389 U.S. 217, 223 (1967); *Bhd. of R.R. Trainmen v. Virginia ex rel. Va. State Bar*, 377 U.S. 1, 5–6 (1964). The challenged state prohibitions in these cases took many different forms: the regulations included (1) prohibitions on legal solicitation, *In re Primus*, 436 U.S. 412, 418–21 (1978), *Bhd. of R.R. Trainmen*, 377 U.S. at 4–5, *Button*, 371 U.S. at 419; (2) a prohibition on the unauthorized practice of law, *United Mine Workers*, 389 U.S. at 218; and (3) an injunction that restrained a union from engaging in various activities related to the provision of legal services, *United Transp. Union v. State Bar of Mich.*, 401 U.S. 576, 579 n.4 (1971). Despite the differences in the various regulations outlined in these cases, in each, the prohibited state action operated to infringe, not only the right to associate, but also the exercise of some correlating First Amendment right. *See, e.g.*, *In re Primus*, 436 U.S. at 431. These First Amendment rights included: (1) the right to free speech, *see In re Primus*, 436 U.S. at 431 (concluding that the appellant's activities "come[ ] within the generous zone of First Amendment protection reserved for associational freedoms," in part, because "[t]he ACLU engages in litigation as a vehicle for effective political expression"); *see also Button*, 371 U.S. at 431 ("The NAACP is not a conventional political party; but the litigation it assists . . . makes possible the distinctive contribution of a minority group to the *ideas and beliefs* of our society. For such a group, association for litigation may be the most effective form of *political association*.") (emphasis added)); and (2) the right to petition the government for redress of grievances, *see United Transp. Union*, 401 U.S. at 585 ("[C]ollective activity undertaken to obtain meaningful access to the courts is a fundamental right within the protection of the First

Amendment"); *see also United Mine Workers*, 389 U.S. at 221–22 ("We hold that the freedom of speech, assembly, and petition guaranteed by the First and Fourteenth Amendments gives petitioner the right to hire attorneys on a salary basis to assist its members in the assertion of their legal rights." (footnote omitted)); *see also Bhd. of R.R. Trainmen*, 377 U.S. at 5 ("[T]he First Amendment's guarantees of free speech, petition and assembly give railroad workers the right to gather together for the lawful purpose of helping and advising one another in asserting the rights Congress gave them.").

Here, North Carolina's prohibition under the UPL Statues as applied to CAI and its' proposed provision of legal services does not violate the right of association because CAI's proposal would not further the collective exercise of any activity entitled to First Amendment protection. CAI proposes to provide its members "employment-related legal advice and services" that could include drafting employment, separation, and non-compete agreements, reviewing employment policies and handbooks, and representation before the EEOC. (ECF No. 105-1 ¶ 34, 44.) In addition, CAI alleges in its Complaint that it is being precluded from "earning revenues by employing licensed attorneys to provide [this] legal advice and services to its members." (ECF No. 1 ¶ 98.) Unlike the clear constitutional objectives advanced by *Button* and its progeny, CAI has failed to provide evidence that any activity for which it claims a right to associate is deserving of First Amendment protection. The proposed legal services would not include assistance with litigation or the vindication of any statutory rights. (ECF No. 106-1 at 64–67.) They would not further the right to free speech pertaining to political expression as in *Button* and *Primus*; nor would they further the right to petition the government for redress before a court or an agency as in *United Transportation Workers*, *Trainmen*, or *Mine*

21

*Workers*, by, for example, advising CAI members as to how they might vindicate their constitutional or statutory rights. CAI's characterization of *Button* and its progeny as establishing a First Amendment right to undertake "a broad range of group legal services" overstates the breadth of these holdings. (*See* ECF 104 at 23.)

Because CAI's proposed provision of legal services would not further the exercise of any protected First Amendment activity, CAI is not entitled to any corresponding First Amendment associational protection merely because the activities would be undertaken collectively. CAI has failed to meet its burden on its right of association claim. The State Bar is accordingly entitled to judgment as a matter of law on this claim.

### 4. *Vagueness*

CAI next argues that the UPL Statutes are unconstitutionally vague as applied to its current and proposed activities, (ECF 104 at 32–34), characterizing them as "sweeping and opaque restrictions that fail to give sufficient guidance as to what constitutes legal advice," (*id.* at 33). The State Bar responds that the UPL Statutes' prohibition on giving legal advice is not vague, because the term "legal advice" is well-defined, and further CAI understands the term. (ECF No. 113 at 30–33.)

A claim that a statute is void-for-vagueness arises under the Due Process Clause. *See Holder v. Humanitarian Law Project*, 561 U.S. 1, 18 (2010). The statute will violate due process on vagueness grounds when it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Martin v. Lloyd*, 700 F.3d 132, 135 (4th Cir. 2012) (quoting *United States v. Williams*, 553 U.S. 285, 304 (2008)). CAI contends that the UPL Statutes fail to provide

sufficient notice of the conduct prohibited by the term "legal advice." (ECF 104 at 33.) Despite this contention, CAI appears to understand the term "legal advice" and has repeatedly used the term to describe its current and proposed activities. Bruce Clarke, CAI's President and CEO, demonstrated his understanding of that term in a 2013 communication with the State Bar when he noted that legal advice entails "applying a legal solution to specific facts." (ECF No. 42-1 at 2.) Further, he confirmed in his deposition that he understands a "reasonable definition" of the term following his review of the General Statutes. (ECF No. 113-1 at 124–25.) In its Complaint, CAI alleges that it currently provides its members "non-legal advice" through its "Advice and Resolution Team." (ECF No. 1 ¶¶ 18, 19.) Mr. Clarke also described the proposed services that form the basis of this suit as offering "employment-related legal advice and services." (ECF No. 105-1 ¶ 34, 44.) Indeed, as argued by the State Bar, CAI's Complaint alleges that CAI's attorneys are "'educated and licensed' with respect to 'giving legal advice,' and 'could render to CAI members competent legal advice.'" (ECF No. 113 at 31 (quoting ECF No. 1 ¶¶ 34, 37) (emphasis omitted).) There is little question that CAI understands that the UPL Statutes prohibit CAI from offering legal advice as applied to its current and proposed activities. *See Humanitarian Law Project*, 561 U.S. at 22 (concluding that statutory terms challenged on vagueness grounds "readily and naturally cover[ed] plaintiffs' conduct" when the "plaintiffs themselves ha[d] repeatedly used the terms . . . throughout th[e] litigation" to describe their own conduct).

The Court is also not persuaded by CAI's argument that "CAI cannot identify the line between lawful compliance advice and unlawful legal advice." (*See* ECF No. 104 at 34.) The vagueness doctrine does not require "perfect clarity and precise guidance," *Ward v. Rock*

*Against Racism,* 491 U.S. 781, 794 (1989), rather it requires only "fair notice" of prohibited conduct, *Martin*, 700 F.3d at 135. Nor is the Court persuaded by CAI's reliance on hypothetical situations involving the question of whether the term "legal advice" could apply to prohibit a passenger from communicating a speed limit to a driver. (*See* ECF No. 104 at 33–34.) *See Williams*, 553 U.S. at 306 ("What renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is."). Hypothetical situations unrelated to CAI's specific conduct are irrelevant to its as-applied vagueness challenge. *See Humanitarian Law Project*, 561 U.S. at 22–23.

The Court concludes that CAI's vagueness claim lacks merit because there is no question that CAI has fair notice of the conduct that the term "legal advice" prohibits, as applied to CAI's current and proposed activities. *See Humanitarian Law Project*, 561 U.S. at 21 ("[T]he dispositive point here is that the statutory terms are clear in their application to plaintiff's proposed conduct, which means that plaintiffs' vagueness challenge must fail."). For the reasons outlined, the State Bar is entitled to judgment as a matter of law on this claim.

### 5. Monopoly Clause

CAI next contends that the UPL Statutes, as applied to its proposed legal services, violate the Monopoly Clause of the North Carolina Constitution.[12] (ECF No. 104 at 35–36.) CAI argues that the UPL Statutes, as applied, "merely protect the economic interests of attorneys by sheltering attorney-owned entities from competition with non-attorney-owned

---

[12] The Monopoly Clause states that "[p]erpetuities and monopolies are contrary to the genius of a free state and shall not be allowed." N.C. Const. art. I, § 34.

entities." (*Id.* at 36.) The State Bar argues that North Carolina courts have concluded that the UPL Statutes do not violate the Monopoly Clause, and that those decisions bind this Court. (ECF No. 113 at 34–35.)

A federal court hearing a state-law claim is obligated to apply the law of the state as interpreted by that state's highest court. *See Wetzel v. Edwards*, 635 F.2d 283, 289 (4th Cir. 1980) ("[I]t is well-settled that the federal courts are bound by the interpretation placed on state statutes by the highest courts of the state."). The North Carolina Supreme Court has twice held that the state's prohibition on the corporate practice of law does not violate the North Carolina Constitution. *See Gardner v. N.C. State Bar*, 341 S.E.2d 517, 523 (N.C. 1986) (concluding that the prohibition of the corporate practice of law does not violate "Article I of the North Carolina Constitution"); *Seawell v. Carolina Motor Club*, 184 S.E. 540, 544 (N.C. 1936) (concluding that the prohibition of the corporate practice of law "offends neither the State nor Federal Constitution"). While neither decision presented the precise legal question before the Court in the present case, namely, whether the Monopoly Clause of the North Carolina Constitution tolerates the state's prohibition on the corporate practice of law, as applied to CAI's proposed legal services, the Court finds them instructive, though not dispositive.

The Court finds more persuasive, however, two century-old opinions of the North Carolina Supreme Court, which upheld the state's power to regulate two other professions against challenges that those regulatory schemes violated the Monopoly Clause. In the first, *State v. Call*, 28 S.E. 517 (N.C. 1897), the North Carolina Supreme Court held that the state's regulation of the medical profession, as applied to an individual who was indicted for practicing without a license, did not violate the Monopoly Clause. *Call*, 28 S.E. at 517. In so

holding, the court reasoned that the state can regulate "persons desiring to practice law or medicine . . . or exercise other callings, whether skilled trades or professions, affecting the public and which require skill and proficiency," and that such regulation "is in no sense the creation of a monopoly or special privileges." *Id.* In the second, *St. George v. Hardie*, 60 S.E. 920 (N.C. 1908), the North Carolina Supreme Court held that the State's regulation of "pilots and pilotage" did not violate the Monopoly Clause, reasoning that the power to regulate and license pilots "comes within the principle upon which the state prescribes the qualifications of those who are admitted to practice law . . . and other callings and professions so related to the public." *St. George*, 60 S.E. at 923.

In this case, CAI's Monopoly Clause challenge fails for the same reasons articulated by the North Carolina Supreme Court in *State v. Call* and *St. George v. Hardie*. *See Assicurazioni Generali, S.p.A. v. Neil*, 160 F.3d 997, 1002 (4th Cir. 1998) ("It is axiomatic that in determining state law a federal court must look first and foremost to the law of the state's highest court, giving appropriate effect to all its implications. A state's highest court need not have previously decided a case with identical facts for state law to be clear. It is enough that a fair reading of a decision by a state's highest court directs one to a particular conclusion."). The UPL Statutes, as applied to CAI's proposal to provide legal services, regulate those persons and entities that North Carolina has judged to be qualified to practice law and are "in no sense the creation of a monopoly," *Call*, 28 S.E. at 517.

CAI does not discuss *State v. Call* and *St. George v. Hardie* in its brief. (ECF No. 104 at 35–36.) Instead, CAI relies heavily on a different case, *State v. Ballance*, 51 S.E.2d 731 (N.C. 1949), where the North Carolina Supreme Court held that a licensing scheme that applied to

photographers offended the Monopoly Clause. *Ballance*, 51 S.E.2d at 736. The Court does not find *State v. Ballance* persuasive, however, as the North Carolina Supreme Court's conclusion that the licensing scheme for photographers violated the Monopoly Clause followed from its conclusion that photography was "in essence, a private business unaffected in a legal sense with any public interest." *Id.* at 735. The legal profession, in contrast, could not be more different. *See Pledger*, 127 S.E.2d at 339 (concluding that the UPL Statutes were "not enacted for the purpose of conferring upon the legal profession an absolute monopoly in the preparation of legal documents; [the] purpose is for the better security of the people against incompetency and dishonesty in an area of activity affecting general welfare"). The Court therefore finds that *State v. Ballance* does not apply given the differences between that case and the present one. Accordingly, the Court concludes that the State Bar is entitled to judgment as a matter of law on this claim.

6.  *Commercial Speech*

Finally, CAI contends that the UPL Statutes unconstitutionally prohibit CAI from advertising legal services. (ECF No. 104 at 34–35.) Specifically, CAI argues that "[b]ecause CAI has a constitutional right to offer legal advice and services to its members, this prohibition is unconstitutional." (*Id.* at 34.) The State Bar argues, on the other hand, that "[t]o have a colorable commercial speech claim [under the First Amendment], CAI must establish that 'the regulated speech concerns lawful activity,' which it cannot do." (ECF No. 123 at 31 (quoting ECF No. 104 at 35).) CAI and the State Bar agree that CAI's commercial advertising claim turns on CAI's contention that its provision of legal services is lawful. (ECF Nos. 104 at 34–35; 113 at 33; 123 at 31.) Here, because CAI has failed to establish that it has a constitutionally

protected right to provide legal services, doing so would constitute unlawful activity under the UPL Statutes. The Supreme Court in *Central Hudson Gas & Electric Corp. v. Public Service Commission of New* York, 447 U.S. 557 (1980), makes clear that First Amendment protection of commercial speech can only apply when the underlying activity is lawful. *Centr. Hudson Gas & Elec. Corp.*, 447 U.S. at 564; *see Educ. Media Co. at Va. Tech v. Insley*, 731 F.3d 291, 298 (4th Cir. 2013). Thus, CAI has no First Amendment right to advertise legal services since its right to provide such services is unlawful under the UPL Statutes. Accordingly, the State Bar, and not CAI, is entitled to judgment as a matter of law on this claim.

## IV. CONCLUSION

For the reasons stated herein, State Prosecutors have not carried their burden of demonstrating that CAI lacks standing or that State Prosecutors are entitled to judgment as a matter of law on CAI's right of association claim. State Prosecutors' motion, (ECF No. 100), must therefore be denied. CAI has not carried its burden of demonstrating that it is entitled to judgment as a matter of law on any of its six claims; CAI's motion, (ECF No. 103), must, therefore, be denied. The State Bar, however, has shown that it is entitled to judgment as a matter of law on each of CAI's claims. Because there is no genuine issue of material fact as to any claim, the Court concludes that the State Bar is entitled to summary judgment and its motion, (ECF No. 112), will be granted, thus dismissing this action.

## ORDER

IT IS THEREFORE ORDERED that State Prosecutors' Motion for Summary Judgment, (ECF No. 100), is DENIED.

IT IS FURTHER ORDERED that CAI's Motion for Summary Judgment, (ECF No. 103), is DENIED.

IT IS FURTHER ORDERED that the State Bar's Motion for Summary Judgment, (ECF No. 112), is GRANTED, and this case is therefore DISMISSED.

A Judgment dismissing this action will be entered contemporaneously with this Order.

This, the 19th day of September, 2017.

_____/s/ Loretta C. Biggs_____
United States District Judge